Alfred APODACA, Appellant
(Defendant),

v.

The STATE of Wyoming, Appellee
(Plaintiff).

No. 5437.

Supreme Court of Wyoming.

May 8, 1981.

Before ROSE, C. J., and RAPER, THOM-AS, ROONEY and BROWN, JJ.

RAPER, Justice.

■ From his conviction of and sentence for delivery of a controlled substance in violation of § 35–7–1014(d)(x), W.S.1977,[1] and § 35–7–1031(a)(ii), W.S.1977,[2] along with conspiracy to deliver a controlled substance in violation of § 35–7–1042, W.S. 1977,[3] appellant has appealed on two bases. First, he claims that the admission of evidence regarding his sale of a substance which had been promoted by him as angel dust,[4] also known as PCP, unfairly prejudiced the jury against him and denied him a fair trial. Second, he argues that the failure of the information to allege an overt act in conjunction with the conspiracy charge rendered it fatally defective.

We will affirm.

Neil J. Short, Casper, for appellant.

Steven F. Freudenthal, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Crim. Div., and Marion Yoder, Asst. Atty. Gen. (argued), on brief, for appellee.

I

In the course of his duties with the Natrona County Drug Task Force, an undercover investigator first telephoned the appellant on November 26, 1979. The investi-

1. Section 35–7–1014(d)(x), W.S.1977 (Substances included in Schedule I):

"(d) *Hallucinogenic substances.*—Unless specifically excepted or unless listed in another schedule, any material, compound, mixture or preparation which contains any quantity of the following hallucinogenic substances, their salts, isomers and salts of isomers, unless specifically excepted, whenever the existence of these salts, isomers, and salts of isomers is possible within the specific chemical designation:

    \*     \*     \*     \*     \*     \*

"(x) Marihuana;"

2. Section 35–7–1031(a)(ii), W.S.1977:

"(a) Except as authorized by this act [§§ 35–7–1001 to 35–7–1055], it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance. Any person who violates this subsection with respect to:

    \*     \*     \*     \*     \*     \*

"(ii) Any other controlled substance classified in Schedule I, II or III, is guilty of a crime and upon conviction may be imprisoned for not more than ten (10) years, fined not more than ten thousand dollars ($10,000.00), or both;"

3. Section 35–7–1042, W.S.1977:

"*Any person who attempts or conspires to commit any offense under this article* within the state of Wyoming or who conspires to commit an act beyond the state of Wyoming which if done in this state would be an offense punishable under this article, shall be punished by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense the commission of which was the object of the attempt *or conspiracy.*" (Emphasis added.)

4. Angel dust, or PCP, also known as hog, is phencyclidine, a controlled substance included in Schedule III, § 35–7–1018(c)(vii), W.S.1977. It is an hallucinogen, with medical use as a veterinary anesthetic, which may be smoked, taken orally or injected; results in illusions and hallucinations, *poor perception of time and distance;* the effects of an overdose are longer, more intense "trip" episodes, psychosis and possible death. Vol. 6, No. 2, Drug Enforcement (July, 1979), pp. 20–21, a periodical published by the Drug Enforcement Administration, U. S. Department of Justice.

gator inquired about the possibility of purchasing some angel dust; he was told to call back later in the day, so that a check could be made to determine if there was any available. At approximately 9:30 p. m. that same day, the investigator called appellant again. During this conversation, appellant indicated that he thought he could get the angel dust but that he would have to pick it up from someone else. He then stated "that he had a quantity of marijuana at the house he would be willing to sell also." The price for this was pegged at $525 a pound.

The next day a rendezvous was planned for the Casper Husky East parking lot where "they" would meet the investigator. The arrangement called for the delivery of both the marijuana and some angel dust. When the investigator was approached in the parking lot by two people in a yellow Datsun pickup, as the plan called for, he greeted them and they responded. He was able to recognize appellant's voice from the previous phone conversations. Appellant then announced that he had the dope and wanted the investigator to try it and see if he liked it. The investigator agreed and got into the pickup. During the ride, the investigator was given a tinfoil packet by the other passenger at the request of appellant, which appellant asserted was angel dust, and a bag of unmanicured marijuana which the passenger, at the instance of appellant, got from the back of the truck. In return, appellant was paid $545 for the merchandise. The Datsun returned to the Husky parking lot where the investigator's partner was waiting. Appellant and his associate were then arrested. It was thereafter determined that the substance in the tinfoil packet was not angel dust. The investigator had been ripped off in that respect.[5]

On January 3, 1980, the following information was filed:

"Comes Now James C. Anderson, Deputy County and Prosecuting Attorney of the County of Natrona, in the State of Wyo-

ming, and in the name and by the authority of the State of Wyoming, informs the Court and gives the Court to understand that ALFRED APODACA late of the County aforesaid, on the 27 day of November, 1979, in the County of Natrona, in the State of Wyoming, did unlawfully

### "Count I

"deliver a controlled substance, to-wit: marihuana, in violation of Wyoming Statutes 1977, Sections 35–7–1014(d)(x) and 35–7–1031(a)(ii) which are [sic]

### "Count II

"conspire to deliver a controlled substance, to-wit: marihuana, in violation of Wyoming Statutes 1977, Sections 35–7–1014(d)(x), 35–7–1031(a)(ii) and 35–7–1042, which are [sic]

"contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Wyoming."

On July 25, 1980, appellant moved in limine for an order denying the use of any testimony concerning PCP or angel dust. The trial court denied the motion. The same motion was again made and denied at trial.

After the case had proceeded to trial on August 18, 1980, appellant sought the dismissal of the conspiracy count claiming that the information failed to properly allege the crime of conspiracy to deliver a controlled substance. This motion was denied following argument.

Late on August 19, 1980, the jury returned a verdict convicting appellant on both counts of the information. He then received on November 5, 1980, a sentence of four to six years imprisonment on both counts; however, the judge ordered that the sentences were to be served concurrently.

---

**5.** Rip-off is sometimes a defense where the substance sold is bogus. See *U. S. v. Knowles*, infra. As a matter of related interest, see § 35–7–1002(a)(v) defining counterfeit substance and the penalty, § 35–7–1031(b). The substance represented as angel dust in the case before us was apparently not a controlled substance.

## II

We shall consider appellant's second claim first since in it he contends that the information was fatally defective. His argument is that an overt act is an essential element of the crime of conspiracy. An information must set forth each element of a crime or it is defective. In this case, appellant continues that since the information failed to set forth an overt act, it was insufficient.

■ As appellant noted, in Wyoming an information to be legally adequate must identify the offense charged so as to enable the accused to prepare his defense. This court said in *Gonzales v. State*, Wyo., 551 P.2d 929, 933 (1976):

"In summary, an indictment to be legally sufficient must fairly indicate the crime charged, must state the essential elements of the alleged crime and be sufficiently definite so that the defendant can prepare his defense and grant protection from further prosecution for the same offense (double jeopardy)."

In this case the information listed the date and the county of venue where the offense was allegedly committed. Within the same information was the charge of actual delivery of marijuana on the same date and in the same county of the conspiracy. Appellant seems to be arguing that this was too vague to be sufficient.

■ Wyoming has in addition to the special conspiracy statute pertaining to drug violations under which appellant was charged, one of a general nature creating the crime of conspiracy, § 6–1–117, W.S. 1977:

"If two (2) or more persons conspire to (a) commit a felony in the state of Wyoming or to commit an act beyond the state of Wyoming which if done in this state would be a felony, *and (b) one (1) or more of such persons do any act*, within or without the state of Wyoming, to effect the object of the conspiracy, each, upon

conviction, shall be fined not more than one thousand dollars ($1,000.00) or imprisoned in the penitentiary not more than ten (10) years or both. A conspiracy may be prosecuted in the county where the conspiratorial agreement or combination was entered into, or in any county where any act or acts evidencing the conspiracy or in any county wherein the furtherance of its purpose took place." (Emphasis added.)

While the commission of an overt act is a necessary element of proof in establishing the general crime of conspiracy, *Jasch v. State*, Wyo., 563 P.2d 1327 (1977), this court has not had occasion to determine the exact essentials of an information charging a conspiracy under the foregoing statute. We need not decide that in this case. The mention of § 6–1–117 is only introductory to what follows.

■ The Wyoming controlled substances conspiracy statute (footnote 3), under which appellant was charged, is strikingly similar to the language in the Federal Comprehensive Drug Abuse Prevention and Control Act of 1970. That act in pertinent part provides:

"*Any person who attempts or conspires to commit any offense defined in this subchapter* is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846. (Emphasis added.)

This language has been construed as altering in drug violations the general law of conspiracy. It is the rule in federal court that when a defendant is charged under 21 U.S.C. § 846, "the government need not allege and prove an overt act to sustain a conviction." *United States v. Marable*, 578 F.2d 151 (5th Cir. 1978). See also, *United States v. Knowles*, 572 F.2d 267 (10th Cir. 1978); *United States v. Bommarito*, 524 F.2d 140 (2nd Cir. 1975).[6]

---

6. It is noticed, however, that the trial judge instructed the jury that one of the necessary elements of the crime to be proven beyond a reasonable doubt was that "the Defendant or one of the persons with whom he conspired did any act within the State of Wyoming, to effect

When the Wyoming legislature adopts a statute derived from another jurisdiction, the case law found in that jurisdiction construing the statute is persuasive authority. *Woodward v. Haney*, Wyo., 564 P.2d 844 (1977). Thus, since § 35–7–1042, W.S.1977, was derived from 21 U.S.C. § 846, we view the federal case law on the latter as convincing authority when construing the former. Since under the federal statute an overt act is not an essential element of the crime of conspiracy, we hold that the same is true in Wyoming when a defendant is charged under § 35–7–1042, W.S.1977. The requirements, however, spelled out in *Gonzales v. State*, supra, still must be satisfied. We hold that they were. The defendant was sufficiently apprised of the charges against him so as to allow the preparation of his defense. If appellant felt he needed more information with respect to the charges against him, he could have moved for a bill of particulars,[7] designed to make more specific and certain the general allegations of the information to enable a defendant to prepare his defense and avoid being surprised at trial. *Booth v. State*, Wyo., 517 P.2d 1034 (1974). We find no indication of surprise nor concern about lack of knowledge by appellant of the State's case. Attached to one of appellant's pretrial motions, dated July 28, 1980, was an affidavit of the investigating officer which set out the facts of the entire conspiracy of which appellant was a part and was actually the same as the evidence produced at the trial held on August 18, 1980. Appellant had the benefit of complete discovery of the State's case before trial. It was not until the day of the trial that appellant moved to dismiss on the ground that the information failed to allege an overt act.

## III

Appellant's other contention is that "[t]he admission of testimony in evidence regarding 'PCP' carried no probative value, unfairly prejudiced the jury, and denied the defendant/appellant a fair trial." However, a trial court's resolution of questions concerning the admissibility of evidence is accorded considerable deference, so long as there exists a legitimate and rational basis for it. *Vasquez v. State*, Wyo., 623 P.2d 1205 (1981). The trial court could have legitimately concluded that evidence had probative value under the rule that it constituted "an inseparable part of the whole deed." 1 Wigmore, Evidence § 218 (3rd Ed. 1940). See Louisell and Mueller, 2 Federal Evidence, § 140 (1978), pp. 123–125.

When appellant claims the testimony was unduly prejudicial under Rule 403, W.R.E.,[8] he must demonstrate that the evidence had little or no probative value and that it was extremely inflammatory or introduced for the purpose of inflaming the jury. *Key v. State*, Wyo., 616 P.2d 774, 776 (1980). Appellant has failed to meet his burden in this case. His mere assertion that "[t]he very mention of 'PCP' or 'angel dust' inflames an individual's passion or prejudice due to television documentaries and newspaper and magazine articles," is

---

the object of the conspiracy." While not an essential element of the conspiracy to be proven in this case, this instruction nevertheless became the law of this case, in the absence of objection. *Matter of Estate of Mora*, Wyo., 611 P.2d 842, 846 (1980) and cases there cited. The evidence as we have outlined it showed several overt acts by both conspirators, so the State carried its burden as instructed. The appellant received a bonus in that regard.

7. Rule 9(d), W.R.Cr.P.:
   "(d) The court for cause may direct the filing of a bill of particulars. A motion for bill of particulars may be made only within ten (10)

days after arraignment or at such other time before or after arraignment as may be prescribed by rule or order. The bill of particulars may be amended at any time subject to such conditions as justice requires."

8. Rule 403, W.R.E.:
   "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

insufficient in this case to convince us of the proposition. We do not know of the existence of such a reaction to the terms PCP or angel dust; the record fails to reflect that such a reaction was or would be present. We find no evidence to that effect in the record. The trial court was not placed in a position where it could take judicial notice of such allegedly prejudicial fact, nor are we.[9]

Affirmed.

9. Rule 201, W.R.E.:

"(a) *Scope of rule.* This rule governs only judicial notice of adjudicative facts.

"(b) *Kinds of facts.* A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

"(c) *When discretionary.* A court may take judicial notice, whether requested or not.

"(d) *When mandatory.* A court shall take judicial notice if requested by a party and supplied with the necessary information.

"(e) *Opportunity to be heard.* A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.

"(f) *Time of taking notice.* Judicial notice may be taken at any stage of the proceeding.

"(g) *Instructing jury.* In a civil action or proceeding, the court shall instruct the jury to accept as conclusive any fact judicially noticed. In a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed."