2010 WY 6

**David Dale BAKER, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–08–0094.**

Supreme Court of Wyoming.

Jan. 20, 2010.

Representing Appellant: Diane M. Lozano, State Public Defender, Tina N. Kerin, Appellate Counsel, Eric M. Alden, Senior Assistant Appellate Counsel. Argument by Mr. Alden.

Representing Appellee: Bruce A. Salzburg, Attorney General, Terry L. Armitage, Deputy Attorney General, D. Michael Pauling, Senior Assistant Attorney General, Jenny Lynn Craig, Assistant Attorney General. Argument by Ms. Craig.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶1] A jury convicted David Dale Baker of one count of possessing controlled substance precursors with intent to engage in a clandestine laboratory operation associated with that crime, three counts of conspiracy, and two counts of child endangerment. He was sentenced to concurrent terms of six to eight years on the first four counts, and concurrent terms of eighteen to twenty-four months on the child endangerment charges. The two terms, however, were to be served consecutively. On appeal, Baker advances arguments regarding whether the search of his home was proper, whether the trial court erred in denying his Motion for Judgment of Acquittal, whether the trial court erred in its instructions to the jury, whether he was denied effective assistance of counsel, and whether merger of offenses, both with respect to charging and sentencing, applies in his case. We affirm in part, and, for sentencing purposes, remand in part.

## ISSUES

[¶2] Baker states the issues as follows:

1. Evidence seized during the warrantless search of Mr. Baker's home and garage should have been suppressed.

2. The Trial Court should have granted Mr. Baker's Motion for Acquittal on Counts V and VI.

3. The trial court's instruction to the jury on the elements of W.S. § 6–4–405(a)(ii) failed to clarify that the presence of the child must be contemporaneous with the manufacturing activity.

4. The trial court applied the wrong conspiracy statute and failed to instruct the jury on the proper elements of conspiracy.

5. Mr. Baker was not provided effective assistance of counsel.

6. Counts II, III, and IV should merge for both charging and sentencing.

The State rephrases the issues this way:

1. The district court did not err when it denied [Baker's] motion to suppress evidence.

2. The district court did not err when it denied [Baker's] Motion for Judgment of Acquittal.

3. The district court did not fail to adequately instruct the jury regarding the elements of Wyo. Stat. Ann. § 6–4–405(a)(ii).

4. [Baker] was not prejudiced by a jury instruction that required the jury to deliberate regarding the conspiracy counts III and IV pursuant to Wyo. Stat. Ann. § 35–7–1042.

5. [Baker] did not receive ineffective assistance of counsel at trial.

6. Counts II, III, and IV of the information should not have merged for the purposes of charging but should have, and ultimately did merge for the purposes of sentencing.

## FACTS

[¶ 3] On December 20, 2006, Crystal Merck reported to the Casper Police Department that she had been assaulted by her live-in boyfriend, David Baker. According to Merck, she and Baker argued and he repeatedly hit her in the head and caused a cut to her right upper lip. Merck agreed to accompany Officers Douglas and Dabney to her home so they could investigate the incident and interview Baker—Merck accompanied the officers to the residence because she assumed that Baker would not open the door for the officers, and she was going to attempt to convince Baker to speak with them and allow them inside the home.

[¶ 4] Upon arriving at the residence, Officer Douglas noted that Baker's pickup was running. Inside the pickup, the officer noticed a large dog, several firearms, and a knife on the front seat of the vehicle. Additional officers were requested, and after they arrived, Merck unlocked the back door of the house with her own key. However, the door being chained from the inside, it only opened a few inches. Merck yelled into the house, asking that Baker come outside. When he did not, Merck gave the officers permission to break the door in, which they did. The officers conducted a protective sweep of the residence and began looking for Baker. In doing so, they noticed drug paraphernalia—specifically, methamphetamine paraphernalia.

[¶ 5] The Wyoming Department of Criminal Investigation (DCI) was contacted and arrived at the residence within the hour. After speaking with Merck and learning that she and her two children lived at the residence with Baker, Agent Wetzel of the DCI explained to her that he had reason to believe that methamphetamine was being manufactured in the home, and requested her permission to enter the house, garage, and trailer. Merck agreed and, in addition, provided the agent with a key to the trailer.

[¶ 6] After an extensive search of the premises, DCI agents found several items consistent with the manufacture of methamphetamine including, but not limited to: a propane bottle with a torch; hoses that had been sliced and connected to valves; acetone containers; hydrogen peroxide; laboratory glassware containing a white powdery residue (that eventually tested positive for methamphetamine); a filter for an air purifying respirator; a turkey baster (that eventually tested positive for methamphetamine); and an electric hot plate burner (that eventually tested positive for methamphetamine, pseudoephedrine, and amphetamine).

[¶ 7] In January of 2007, Baker was charged with six counts: one count of possessing a controlled substance precursor with intent to engage in a clandestine laboratory operation, in violation of Wyo. Stat. Ann. § 35–7–1059(a)(i) (LexisNexis 2009), one count of conspiracy to engage in a clandestine laboratory operation, in violation of Wyo. Stat. Ann. § 35–7–1059(a)(iv) (LexisNexis 2009), one count of conspiracy to possess a controlled substance precursor with the intent to engage in a clandestine laboratory operation, in violation of Wyo. Stat. Ann. §§ 35–7–1059(a)(i) and 35–7–1042 (LexisNexis 2009), one count of conspiracy to possess laboratory equipment or supplies with the intent to engage in a clandestine laboratory operation, in violation of Wyo. Stat. Ann. §§ 35–7–1059(a)(ii) and 35–7–1042 (LexisNexis 2009), and two counts of child endangerment, in violation of Wyo. Stat. Ann. § 6–4–405(a)(ii) (LexisNexis 2009). A jury trial was held on August 20, 2007, and on August 28, 2007, the jury found Baker guilty of all six counts. The court denied Baker's motions for judgment of acquittal and for new trial after jury verdict. He was sentenced to a term of imprisonment of not less than six years nor more than eight years on each of the possession and conspiracy counts, with each term to be served concurrently. On each count of child endangerment, Baker was sentenced to a term of not less than eighteen months nor more than twenty-four months, those counts to be served concurrently with

each other, but consecutive to the possession and conspiracy sentences. Baker filed a timely notice of appeal.

## DISCUSSION

### Denial of Motion to Suppress—Consent

[¶ 8]   Baker's first issue on appeal is that the warrantless entry into his home was in violation of the Fourth Amendment to the United States Constitution, and art. 1, § 4 of the Wyoming Constitution, because he did not consent to the search. The State disagrees and argues that this instance qualifies as an exception to the warrant requirement.

[¶ 9]   In reviewing a trial court's ruling on a motion to suppress evidence, we do not interfere with the trial court's findings of fact unless the findings are clearly erroneous. We view the evidence in the light most favorable to the trial court's determination because the trial court has an opportunity at the evidentiary hearing to assess the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions. The constitutionality of a particular search is a question of law that we review *de novo*. *Shaw v. State*, 2009 WY 18, ¶ 19, 201 P.3d 1108, 1112 (Wyo.2009).

[¶ 10]   Indeed, under both the United States and Wyoming constitutions, searches and seizures conducted without a warrant are per se unreasonable unless they are justified by probable cause or recognized exceptions. *Pena v. State*, 2004 WY 115, ¶ 29, 98 P.3d 857, 870 (Wyo.2004). Exceptions to the warrant requirement include:

1) search of an arrested suspect and the area within his control; 2) a search conducted while in hot pursuit of a fleeing suspect; 3) a search and/or seizure to prevent the imminent destruction of evidence; 4) a search and/or seizure of an automobile upon probable cause; 5) a search which results when an object is inadvertently in the plain view of police officers while they are where they have a right to be; 6) a search and/or seizure conducted pursuant to consent; and 7) a search which results from an entry into a dwelling in order to prevent loss of life or property.

*Andrews v. State*, 2002 WY 28, ¶ 18, 40 P.3d 708, 712 (Wyo.2002) (internal citations omitted). In this case, the exception to the warrant requirement that ostensibly applies is consent. The officers had the consent of a resident of the home, Baker's live-in girlfriend Crystal Merck.

[¶ 11]   Baker advances a lengthy and citation-filled argument as to why Merck did not have the authority to consent in this instance. Relying upon cases from a variety of jurisdictions, Baker argues, generally, that because Merck was locked out of her house from the inside, she lost all authority to enter the house. Moreover, Baker insists that neither actual nor apparent authority existed. Instead, he states that Merck "had no access at all" to the premises in question, and even though she possessed a key to open the door from the outside, Baker argues that because someone else had chained the door shut from the inside, "further inquiry" was needed as to whether or not Merck had the authority to consent to a search.

[¶ 12]   However, as the State points out, it is well settled that consent to a warrantless search is not confined to consent by a **defendant.** It may also be given by a "third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).

> The authority which justifies the third-party consent rests on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Matlock*, 415 U.S. 164, 171 at n. 7, 94 S.Ct. 988. In fact, consent is valid so long as the officer obtaining the consent reasonably believed that the third party had the authority to consent (even if the belief is in error). *Illinois v. Rodriguez*, 497 U.S. 177, 186, 110 S.Ct. 2793, 2800, 111 L.Ed.2d 148 (1990).

As with other factual determinations bearing upon search and seizure, determination

of consent to enter must "be judged against an objective standard: would the facts available to the officer at the moment ... 'warrant a man of reasonable caution in the belief' " that the consenting party had authority over the premises? If not, then warrantless entry without further inquiry is unlawful unless authority actually exists. But if so, the search is valid.

*Andrews,* ¶ 25, 40 P.3d at 714 (internal citations omitted).

[¶ 13] Here, the facts known to the officers at the time of the search support the conclusion that Merck had the authority to consent to a search of the residence. Merck reported a domestic disturbance from **her home** at the hands of her live-in boyfriend. She expected her boyfriend (Baker) to not answer the door, and told the officers that they could go inside the home, and she unlocked the back door with her own key from her personal keychain. And although a "no trespassing" sign was posted on the property, Merck's consent stands.[1]

### Denial of Motion for Judgment of Acquittal—Child Endangerment

[¶ 14] Baker's next claim is that the district court erred when it denied his motion for judgment of acquittal with respect to the two counts of child endangerment, in violation of § 6–4–405(a)(ii), because the State failed to prove the children were present at the time of the manufacturing activities.

[¶ 15] When reviewing a district court's denial of a motion for judgment of acquittal, this Court "accept[s] as true the State's evidence, together with all reasonable inferences to be drawn therefrom, leaving out entirely any conflicting evidence." *Mattern v. State,* 2007 WY 24, ¶ 28, 151 P.3d 1116, 1128–29 (Wyo.2007).

[¶ 16] At the end of the State's case-in-chief, Baker moved for a judgment of acquittal, claiming that the State failed to prove that any manufacturing was taking place in the home or that the children were ever in the home at the time methamphetamine was being manufactured. The district court, however, found that a prima facie case had been established as to this issue and, according to the State, there was ample evidence at trial to allow the district court to reach its judgment on Baker's motion. Through various witnesses the State established that for several months during 2006, Baker conspired with various individuals to operate a clandestine methamphetamine lab.

[¶ 17] First, Zachary Wolf testified that Baker was seeking a recipe to manufacture methamphetamine, and shortly thereafter, Wolf saw "several bottles" of anhydrous ammonia in Baker's garage. Wolf also testified that he saw Baker trying to obtain methamphetamine from a "white sludge" with hydrochloric acid. Wolf also testified that he and Baker tried to make methamphetamine two or three times and that Merck bought cold medicine and would break down those pills inside the house. And, most importantly to this issue, Wolf testified that he was aware that Merck's two young children were living in the home during this activity.

[¶ 18] Merck's testimony also supported that Baker conspired to operate a clandestine methamphetamine lab. Merck testified that when she moved in with Baker, so did her two children. What is more, she also testified that she would "cleanse" the methamphetamine in her home by pouring acetone over it and then letting it dry inside the home. Also, Merck explained that she would put the drugs in her freezer to accelerate the evaporation process and would often use a propane torch or burner to continue the cleansing process. Merck unequivocally ad-

---

1. Despite Baker's argument that the "no trespassing" sign and the door being chained from the inside both should be viewed as implicit indicia of his refusal to consent, these factors are not sufficient to place this situation within the scope of the *Randolph* rule. *See Georgia v. Randolph,* 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006). In that case, the situation involved two co-tenants who were both present at the time of the search. One of the co-tenants explicitly refused to consent to search, while the other tenant readily consented. The key factor recognized in *Randolph,* and by this Court in *McClelland v. State,* 2007 WY 57, 155 P.3d 1013 (Wyo. 2007), is that there was a present, expressly **non-consenting** co-tenant. Here, Baker was not present to refuse consent.

mitted to the criminal activity taking place in her home over the course of basically a year:

> [Mr. Marken]: Ms. Merck, would you agree that between February 1, 2006, and December 20, 2006, that you knowingly and intentionally conspired with or aided David Baker to engage in a clandestine laboratory operation?
>
> [Ms. Merck]: Yes, sir.
>
> Q. And you would agree that the site of that clandestine laboratory operation was [your home] in Casper, Wyoming?
>
> A: Yes, sir.

[¶ 19] It is altogether reasonable to assume that from this evidence, the jury was able to infer that while this manufacturing of methamphetamine was taking place, the children were present.[2] Certainly, operating under the applicable standard of review, there was ample evidence presented that allowed the jury to convict Baker of two counts of endangering children. The district court did not err in denying Baker's motion for judgment of acquittal.

### Jury Instructions—Child Endangerment

▉▉▉▉ [¶ 20] Baker's third argument on appeal is that the district court failed to adequately instruct the jury regarding the elements of child endangerment. However, Baker did not object to this at trial and, accordingly, on review when an appellant does not object to a jury instruction, this Court reviews the issue under the plain error standard, which states as follows:

> First, the record must clearly present the incident alleged to be error. Second, appellant must demonstrate that a clear and unequivocal rule of law was violated in a clear and obvious, not merely arguable, way. Last, appellant must prove that he was denied a substantial right resulting in material prejudice against him.

*Six v. State*, 2008 WY 42, ¶ 12, 180 P.3d 912, 917 (Wyo.2008).

[¶ 21] At trial the district court gave the jury two instructions regarding the two counts of child endangerment and the elements of the crime (one instruction for each count, i.e., for each of the two child victims):

*Instruction No. 31*

The elements of the crime of Child Endangering with methamphetamine, as alleged in Count Five of the Information, are:

1. From on or about the 1st day of February, 2006 through on or about the 20th day of December, 2006;

2. In Natrona County, Wyoming,

3. the Defendant, David Dale Baker;

4. Did knowingly and willfully cause or permit a child, to wit: [Victim I], born October 1, 1998;

5. To remain in a room or dwelling where the Defendant knew that methamphetamine **was** being manufactured.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.[3] [Emphasis added.]

[¶ 22] Baker insists that the instructions were flawed because a change in tense expands the scope of the statute and thus did not require the jury to find that the children were present at the time the methamphetamine was being actively manufactured. The statute reads that children must be present

**2.** Indeed, "Even if the children are not present for the actual 'cook,' they are still in danger. Meth houses remain heavily contaminated for at least six months after the actual cook takes place." Anne E. Hardwick, Comment, *Meth Manufacturing: Arizona Increases Protection for Children*, 39 Ariz. St. L.J. 297, 303–04 (2007) (internal quotations omitted). "Meth manufacturing produces a 'toxic cloud.' ... 'The methamphetamine is deposited everywhere, from

walls and carpets to microwaves, tabletops and clothing. Children living in those labs might as well be taking the drug directly.'" *Id.* at 303.

**3.** The second instruction Baker complains of, Instruction Number 32, reads substantially the same, except that the victim's name and date of birth are changed.

where "methamphetamine **is** being manufactured." See Wyo. Stat. Ann. § 6–4–405 (LexisNexis 2009) (emphasis added). Baker argues that the change in tense expands the scope of the statute and did not require the jury to find that the children were present at the time the methamphetamine was being actively manufactured.

[¶ 23] Under the plain error standard of review, Baker meets the first prong by showing that the alleged error is clearly on the record. However, the second prong is where Baker fails to meet the standard. He cannot show that a clear and unequivocal rule of law was violated in a clear and obvious, not merely arguable, way. The test and rule of law to be used when determining whether or not a jury instruction was proper regarding the necessary elements of a crime is "whether the instructions leave no doubt as to the circumstances under which the crime can be found to have been committed." *Butz v. State*, 2007 WY 152, ¶ 18, 167 P.3d 650, 655 (Wyo.2007).

[¶ 24] The Wyoming Criminal Pattern Jury Instructions track almost exactly to the instruction used at trial in the instant case. The applicable jury instruction reads in pertinent part: " ... Caused or permitted the child to remain in a room, dwelling or vehicle where the defendant knew that methamphetamine was being manufactured or sold." W.Cr.P.J.I. 44.05A (2004). The State argues, and we agree, that this is a compelling showing of the appropriateness of the jury instructions used at trial.

[¶ 25] Moreover, the jury instruction mirrored the language of the statute. That the word "is" was changed to "was" makes sense—the jury was being asked to deliberate as to whether methamphetamine **was** being manufactured in the home between February 1, 2006, and December 20, 2006, which, at the time of trial, had already happened. Thus, the time in question was effectively past tense. "Reasonable jurors, being familiar with the English language, would understand the instruction in accordance with the ordinary meanings and uses of the words." *Butz*, ¶ 22, 167 P.3d at 656. Because Baker failed to meet the second prong of plain error, we affirm this issue and con-

clude that the jury instructions used at trial were proper.

*Jury Instructions—Conspiracy*

[¶ 26] We next turn to Baker's fourth argument on appeal, which is that the district court instructed the jury under the wrong conspiracy statute, and thus, his convictions should be reversed. Specifically, Baker claims that these instructions were given in error, because the "proper" conspiracy statute is Wyo. Stat. Ann. § 6–1–303, which requires proof of an overt act. The State does not altogether disagree but argues mainly that the error, if any, was invited and altogether harmless.

[¶ 27] Wyo. Stat. Ann. § 6–1–303 (LexisNexis 2009) provides:

**§ 6–1–303. Conspiracy; renunciation of criminal intention; venue.**

(a) A person is guilty of conspiracy to commit a crime if he agrees with one (1) or more persons that they or one (1) or more of them will commit a crime and one (1) or more of them does an overt act to effect the objective of the agreement.

(b) A person is not liable under this section if after conspiring he withdraws from the conspiracy and thwarts its success under circumstances manifesting voluntary and complete renunciation of his criminal intention.

(c) A conspiracy may be prosecuted in the county where the agreement was entered into, or in any county where any act evidencing the conspiracy or furthering the purpose took place.

[¶ 28] In *Miller v. State*, 955 P.2d 892, 896–98 (Wyo.1998) we held:

While Miller primarily relies upon his claim of entitlement to relief under the law of the case doctrine, the instruction on the unilateral theory of conspiracy poses a novel question for Wyoming. For that reason we consider whether that instruction was a correct instruction on the law. The Supreme Court of North Dakota has distinguished the bilateral theory of conspiracy from the unilateral theory in this way:

"Under a unilateral formulation, the crime is committed when a person agrees to proceed in a prohibited manner; under a bilateral formulation, the crime of conspiracy is committed when two or more persons agree to proceed in such manner. See Note [Conspiracy; Statutory Reform Since the Model Penal Code, 75 Colum.L.Rev. 1122, 1136 (1975)]. Under either approach, the agreement is all-important to conspiracy. Under the unilateral approach, as distinguished from the bilateral approach, the trier-of-fact assesses the subjective individual behavior of a defendant * * *. Under the traditional bilateral approach, there must be at least two 'guilty' persons, two persons who have agreed."

*State v. Rambousek,* 479 N.W.2d 832, 833–34 (N.D.1992), citing *State v. Kihnel,* 488 So.2d 1238, 1240 (La.App.1986).

Prior to its revision in 1982, as amended in 1983, the statute making conspiracy a crime in Wyoming read:

If two (2) or more persons conspire to (a) commit a felony in the state of Wyoming or to commit an act beyond the state of Wyoming which if done in this state would be a felony, and (b) one (1) or more of such persons do any act, within or without the state of Wyoming, to effect the object of the conspiracy, each, upon conviction, shall be fined not more than one thousand dollars ($1,000.00) or imprisoned in the penitentiary not more than ten (10) years or both. A conspiracy may be prosecuted in the county where the conspiratorial agreement or combination was entered into, or in any county where any act or acts evidencing the conspiracy or in any county wherein the furtherance of its purpose took place.

Wyo. Stat. § 6–1–117 (1977). As revised in 1982, and then amended in 1983, this statute now reads:

(a) A person is guilty of conspiracy to commit a crime if he agrees with one (1) or more persons that they or one (1) or more of them will commit a crime and one (1) or more of them does an overt act to effect the objective of the agreement.

(b) A person is not liable under this section if after conspiring he withdraws from the conspiracy and thwarts its success under circumstances manifesting voluntary and complete renunciation of his criminal intention.

(c) A conspiracy may be prosecuted in the county where the agreement was entered into, or in any county where any act evidencing the conspiracy or furthering the purpose took place.

Wyo. Stat. § 6–1–303 (1988).

The new version was adopted from both the Model Penal Code and the laws of neighboring states. See Theodore E. Lauer, Goodbye 3–Card Monte: The Wyoming Criminal Act of 1982, 19 Land & Water L.Rev. 107, 119 (1984). The Model Penal Code, like the new version of the Wyoming statute, defines conspiracy in the context of a single actor agreeing with another, and this language is said to adopt the unilateral approach. Model Penal Code & Commentaries § 5.03(b) at 382–398 (Official Draft & Revised Comments 1985). While federal courts have continued to follow the bilateral theory of conspiracy, the modern trend in state courts is to rule that a conspiracy count is viable even when one of the participants is a government agent or is feigning agreement. See generally, Model Penal Code & Commentaries § 5.03(b) at 382–398 (Official Draft & Revised Comments 1985); 2 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 6.4(d). *Compare U.S. v. Barboa,* 777 F.2d 1420, 1422 (10th Cir.(N.M.) 1985) with *State v. Null,* 247 Neb. 192, 526 N.W.2d 220, 229 (1995); *Com. v. Sego,* 872 S.W.2d 441, 443 (Ky. 1994); *State v. Conway,* 193 N.J.Super. 133, 472 A.2d 588 (1984); *State v. Hohensee,* 650 S.W.2d 268, 275 (Mo.App.1982) *(rev'd in part on other grounds).* The focus under the unilateral theory is on the culpability of the defendant, without any necessity to establish the guilty mind of one or more co-conspirators.

When we compare the first sentences of the earlier and current statutes in Wyo-

ming, we find that the old statute began "[i]f *two (2) or more* persons conspire to (a) commit a felony in the state of Wyoming * * *," while the new statute reads, *"[a]* person is guilty of conspiracy to commit a crime *if he* agrees with one (1) or more persons that they or one (1) or more of them will commit a crime * * *." (Emphasis added.) Our research discloses that most states that have adopted this second definition of the crime of conspiracy have embraced a unilateral approach to conspiracy, and we hold that is appropriate in Wyoming.

Other states have justified the unilateral theory of conspiracy as sound public policy. A person who believes he is conspiring with another to commit a crime is a danger to the public regardless of whether the other person in fact has agreed to commit the crime. As one text writer has expressed the proposition, "such an approach is justified in that a man who believes that he is conspiring to commit a crime and wishes to conspire to commit a crime has a guilty mind and has done all in his power to plot the commission of an unlawful purpose." Friedman, *Mens Rea in Conspiracy,* 19 Modern L.Rev. 276, 283 (1956), *adopted in,* 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 6.4(d) n.109 at 73. Miller's case furnishes a textbook example of the justification for a unilateral approach. Miller's guilty mind was not diminished by the fact that Powell had made an agreement to serve as a law enforcement informant. It is true that Miller's chance of succeeding in kidnapping his family under the circumstances was minimal, but Miller has "nonetheless engaged in conduct which provides unequivocal evidence of his firm purpose to commit a crime." 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 6.4(d) at 73 (footnote omitted). It is our conclusion that we should follow the majority rule of our sister states, and we hold that valid public policy as well as the language and the legislative history of our conspiracy statute make the unilateral approach to conspiracy the law of Wyoming.

[¶ 29] Wyo. Stat. Ann § 35–7–1042 (LexisNexis 2009) provides:

## § 35–7–1042. Attempts and conspiracies.

Any person who attempts or conspires to commit any offense **under this article** within the state of Wyoming or who conspires to commit an act beyond the state of Wyoming which if done in this state would be an offense punishable under this article, shall be punished by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense the commission of which was the object of the attempt or conspiracy. [Emphasis added.]

[¶ 30] In *Palato v. State,* 988 P.2d 512, 513–16 (Wyo.1999) (emphasis in original) we held:

The question we must resolve is whether Wyoming's controlled substances conspiracy statute, § 35–7–1042, embraces the unilateral or bilateral theory of conspiracy. "Under a unilateral formulation, the crime is committed **when a person agrees** to proceed in a prohibited manner; under a bilateral formulation, the crime of conspiracy is committed **when two or more persons agree** to proceed in such manner." *Miller v. State,* 955 P.2d 892, 896 (Wyo. 1998) (quoting *State v. Rambousek,* 479 N.W.2d 832, 833–34 (N.D.1992)). Therefore, under a unilateral theory, a conspiracy count is viable even when one of the participants is a government agent or is feigning agreement. *Miller,* at 897; Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 6.4(d) (1986).

This court recently considered the unilateral-bilateral question as it pertains to our general conspiracy statute, Wyo. Stat. Ann. § 6–1–303 (Lexis 1999). *Miller.* Based on the language and legislative history of the statute, as well as public policy considerations, we held that § 6–1–303 adopts the unilateral approach to conspiracy. *Id.* Our evaluation of those same considerations, and others, leads us to conclude that the legislature had a different intent when it enacted § 35–7–1042.

This court's primary focus when interpreting a statute is to determine the legislature's intent upon enactment. *Tietema*

*v. State*, 926 P.2d 952, 953 (Wyo.1996). "The initial step in arriving at a correct interpretation * * * is an inquiry respecting the ordinary and obvious meaning of the words employed, according to their arrangement and connection." *Parker Land & Cattle Co. v. Game & Fish Comm'n*, 845 P.2d 1040, 1042 (Wyo.1993) (quoting *Rasmussen v. Baker*, 7 Wyo. 117, 133, 50 P. 819, 823 (1897)). If the language of the statute is plain and unambiguous, we apply its plain meaning and need not consult rules of statutory construction. "[W]hile a determination that the meaning is not subject to varying interpretations will usually end our inquiry, we may resort to extrinsic aids of interpretation, such as legislative history and rules of construction, to confirm our determination." *Houghton v. Franscell*, 870 P.2d 1050, 1054 (Wyo.1994) (citing *Parker*, 845 P.2d at 1045).

> [I]n ascertaining the legislative intent in enacting a statute * * * the court * * * must look to the mischief the act was intended to cure, the historical setting surrounding its enactment, the public policy of the state, the conditions of the law and all other prior and contemporaneous facts and circumstances that would enable the court intelligently to determine the intention of the lawmaking body.

*Carter v. Thompson Realty Co.*, 58 Wyo. 279, 291, 131 P.2d 297, 299 (1942); *see also Parker*, 845 P.2d at 1044. We presume that the legislature enacts statutes with full knowledge of the existing condition of the law and with reference to it. *Parker*, at 1044.

Wyoming's controlled substances conspiracy statute provides:

> **Any person who** attempts or **conspires** to commit any offense under this article [the Wyoming Controlled Substances Act] within the state of Wyoming or who conspires to commit an act beyond the state of Wyoming which if done in this state would be an offense punishable under this article, shall be punished by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense the commission of which was the object of the attempt or conspiracy.

Wyo. Stat. Ann. § 35–7–1042 (Lexis 1999) (emphasis added). We find that § 35–7–1042 is ambiguous with respect to whether it adopts a bilateral or unilateral theory of conspiracy. The ambiguity in the statute arises from the use of the singular "[a]ny person" language, which since the adoption of the Model Penal Code has been said to be indicative of the unilateral approach to conspiracy, and the traditional, common law view that it takes at least two guilty parties to "conspire." *See, e.g., Jasch v. State*, 563 P.2d 1327, 1332 (Wyo.1977) (quoting *Goldsmith v. Cheney*, 447 F.2d 624 (10th Cir.1971)) ("A conspiracy is an agreement between two or more persons to do an unlawful act.").

The history of Wyoming's drug conspiracy statute provides some insight into the legislature's intent at the time of its enactment. Section 35–7–1042 was derived, not from the general conspiracy statute or the Model Penal Code, but from the Federal Comprehensive Drug Abuse Prevention and Control Act of 1970, codified at 21 U.S.C. § 846. When the Wyoming legislature adopts a statute from another jurisdiction, that jurisdiction's case law construing the statute is considered persuasive authority and an aid to determine legislative intent. *Apodaca v. State*, 627 P.2d 1023, 1027 (Wyo.1981); *Woodward v. Haney*, 564 P.2d 844, 845–46 (Wyo.1977). As such, we have looked to the case law interpreting the federal conspiracy provision as persuasive authority when interpreting § 35–7–1042. *Apodaca*, 627 P.2d at 1027; *Dorador v. State*, 768 P.2d 1049, 1053–54 (Wyo.1989).

The federal courts have consistently adhered to the *Sears* rule, a Fifth Circuit Court of Appeals holding that there can be no conspiratorial liability imposed when the only other person involved is a government agent. *Sears v. United States*, 343 F.2d 139, 142 (5th Cir.1965); *see also United States v. Rosenblatt*, 554 F.2d 36, 38 n. 2 (2d Cir.1977); *United States v. Escobar de Bright*, 742 F.2d 1196, 1198–99 (9th Cir.1984). The federal rule, which takes a

bilateral approach, is grounded in the traditional definition of conspiracy as "an agreement between two or more people to commit an unlawful act." *Escobar de Bright,* 742 F.2d at 1199. The reasoning behind the federal approach is that the act of agreeing is a group act requiring at least two people, and when one of two persons merely pretends to agree, there is neither a true agreement nor a meeting of the minds. *Id.* This was the conventional view of conspiracy law, and the view espoused by a majority of states, including Wyoming when § 35–7–1042 was enacted in 1971. In *Miller,* we determined the modification of the language in Wyoming's general conspiracy statute from the traditional "[i]f two (2) or more persons conspire" to the Model Penal Code formulation of "[a] person is guilty of conspiracy to commit a crime if" evidenced the legislature's intent to move to the unilateral approach. In contrast, § 35–7–1042 has not been amended since its enactment, and we find no similar evidence of legislative intent to depart from the federal bilateral position.

We acknowledge that this construction results in divergent treatment of conspiracies in Wyoming, depending on whether controlled substances are involved. However, the adoption of the Wyoming Controlled Substances Act, §§ 35–7–1001 et seq., suggests the legislature intended to treat drug crimes differently. The preamble of the Act describes it as "providing a comprehensive codification and revision of the laws of the State of Wyoming relating to controlled substances and the use and abuse of drugs," providing for, among other things, "crimes and offenses." 1971 Wyo. Sess. Laws, ch. 246. At the time it was enacted, the legislature removed from the criminal code those provisions governing crimes and enforcement relating to controlled substances and placed them in the Act. *Id.*

In addition, we note that § 35–7–1042 has already been determined to alter the general law of conspiracy in an important respect. *Apodaca,* 627 P.2d at 1026–27. Specifically, the drug conspiracy statute includes no overt act requirement. When a defendant is charged under § 35–7–1042, the government is not required to allege and prove an overt act to sustain a conviction. *Apodaca,* 627 P.2d at 1027. An overt act requirement affords at least a minimal added assurance, beyond the bare agreement, that a socially dangerous combination exists and that a person is not punished for a mere evil state of mind. Deirdre A. Burgman, *Unilateral Conspiracy: Three Critical Perspectives,* 29 DePaul L.Rev. 75, 102 (1979). With respect to unilateral conspiracies, the overt act requirement is conceivably a protection to insure that police activity is not abused. *See id.* at 101. The Model Penal Code does not require an overt act for conspiracies to commit first and second degree crimes. Model Penal Code, *supra,* § 5.03(5). Although the legislature generally followed the Model Penal Code approach when it modified the general conspiracy statute in 1982, the legislature saw fit to retain the overt act requirement for all conspiratorial objectives. Wyo. Stat. Ann. § 6–1–303(b). That being the case, and given the omission of an overt act protection in the drug conspiracy statute, we cannot ascribe to the legislature the intent to adopt the unilateral conspiracy theory absent a clear expression of that intent.

For the reasons stated above, we hold that the controlled substances conspiracy statute embraces the bilateral theory of conspiracy, in accordance with federal case law. The certified question, whether a defendant can be found guilty, under Wyo. Stat. Ann. § 35–7–1042, of conspiring to deliver a controlled substance when the only other member of the alleged conspiracy is a government agent, is answered "no."

Also see *Holzheuser v. State,* 2007 WY 160, ¶ 18, 169 P.3d 68, 78 (Wyo.2007) (intimating that unilateral conspiracy theory might apply, but only concluding that there was no evidence in the record to support any kind of conspiracy theory).

[¶ 31] We review issues regarding jury instructions under the following standard:

Jury instructions shall not be ruled defective absent a showing that the instructions confused or misled the jury as to the proper principles of law and prejudiced the defendant. Prejudicial error must be demonstrated, and prejudice will not be demonstrated unless the instruction confused or misled the jury with respect to the proper principles of law.

*Janpol v. State*, 2008 WY 21, ¶ 7, 178 P.3d 396, 399 (Wyo.2008) (internal citations omitted). Also,

A trial court is given wide latitude in instructing a jury and, as long as the instructions correctly state the law and the entire charge covers the relevant issue, reversible error will not be found. Instructions must be considered as a whole, and individual instructions, or parts of them, should not be singled out and considered in isolation. Prejudice will be determined to exist only where an appellant demonstrates that the instruction given confused or misled the jury with respect to the proper principles of law.

*Bromley v. State*, 2007 WY 20, ¶ 31, 150 P.3d 1202, 1212 (Wyo.2007).

[¶ 32] At trial the jury was instructed regarding the crime of conspiracy in accordance with § 35–7–1042:

### Instruction No. 23

YOU ARE INSTRUCTED that the elements of the crime of Conspiring to Commit the crime of "Knowingly or Intentionally Possessing a List I and/or a List II controlled Substance Precursor," as charged in Count Three of the Information, are:

1. From on or about the 1st day of February, 2006 through on or about the 20th day of December, 2006:

2. In Natrona County, Wyoming;

3. The defendant, David Dale Baker;

4. Agreed with one or more other persons;

5. That they, or one of them, would commit the crime of Knowingly or Intentionally Possessing a List I and/or a List II controlled Substance Precursor, to wit:

(A) List I—Ephedrine or Pseudo-Ephedrine; and/or

(B) List II—Acetone and/or Iodine;

6. With the intent to engage in a clandestine laboratory operation.

In arriving at your decision on Count Three, you must also consider the specific elements of the crime of "Knowingly or Intentionally Possessing a List I and/or List II Controlled Substance Precursor," which are set forth in Instruction No. 24.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty of Count Three.

### Instruction No. 28

YOU ARE INSTRUCTED that the elements of the crime of Conspiring to Commit the crime of "Knowingly or Intentionally Possessing Laboratory Equipment or Supplies With Intent to Engage in a Clandestine Laboratory Operation," as alleged in Count Four of the Information, are:

1. From on or about the 1st day of February, 2006 through on or about the 20th day of December, 2006:

2. In Natrona County, Wyoming;

3. The defendant, David Dale Baker;

4. Agreed with one or more other persons;

5. That they, or one of them, would commit the crime of "Knowingly or Intentionally Possessing Laboratory Equipment or Supplies With Intent to Engage in a Clandestine Laboratory Operation."

In arriving at your decision on Count Four, you must also consider the specific elements of the crime of "Knowingly or Intentionally Possessing Laboratory Equipment or Supplies," which are set forth in Instruction No. 29.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty under Count Four.

[¶ 33] Some factual background may be helpful to the reader on this issue. Baker was originally charged with two counts of

conspiracy pursuant to § 35–7–1042. About one week prior to trial, the State moved to amend the Information to charge Baker with two counts of conspiracy pursuant to § 6–1–303, in place of the former statute. The State discussed, on the record, its confusion surrounding the issue of when each statute should be properly used and concluded that the general conspiracy statute would be the more appropriate statute upon which to proceed. A hearing was held on the matter at which the State demonstrated its indifference as to which statute was used. Defense counsel, however, was adamant that § 35–7–1042 was the appropriate charge. Both the district court and the State were willing to accept defense counsel's position on the matter:

> The Court: Okay. So that part of the amendment, everybody is clear, we're operating under the conspiracy as charged and governed by the Controlled Substances Act, which means an overt act does not have to be established, but it has to be a bilateral operation.
>
> . . . .
>
> Mr. Marken: And the State is comfortable with that.
>
> The Court: Okay.
>
> Mr. Marken: Just so the record is clear—and I think it is at this point—the defense has had an opportunity to call whichever direction we want; and as I understand it, he has been saying the law of this case should be governed by 1042 and not 6–1–303.
>
> The Court: That's what I understand.
>
> Mr. Tolin: And, Your Honor, I think it would be improper for me to sit here and disingenuous to say that because it benefits the defendant, we want you to use this law even though it is clearly not the appropriate law. I think that is inappropriate for me as a defense counsel. And so I think I'm—I'm stuck with that position of

what the Supreme Court said. And I—you know, even though—

> The Court: Okay. I understand, Mr. Tolin.

[¶ 34] With respect to a conspiracy, the jury heard testimony of Zachary Wolf and Crystal Merck, who both admitted to conspiring with Baker to obtain items for a methamphetamine lab. Also, the jury heard both of those witnesses testify regarding the overt acts that were taken in furtherance of the conspiracy (*i.e.*, searching for a methamphetamine recipe; holding bottles of anhydrous ammonia at home to manufacture methamphetamine; driving to purchase as much cold medicine as was possible; Baker supplying money for the purchase of such cold medicines; Merck crushing the cold medicine to place in alcohol as part of the methamphetamine-making process). Furthermore, the jury heard DCI Agent Wetzel testify about the presence of equipment used to manufacture methamphetamine in Baker's home, some of which actually tested positive for methamphetamine.

[¶ 35] In light of the discussion above, we conclude that § 6–1–303 does not apply to this case, in light of the discussion in *Palato* (the general conspiracy statute and the general drug conspiracy statute are distinct). However, we also agree with Baker that § 35–7–1042 does not apply. We arrive at this conclusion after considering the structure and language of the challenged statutes. First, we consider the structure of the Act. Statutes as a whole are divided into titles, chapters, and articles. The Act is contained in Title 35, Chapter 7, Article 10. Statutory Article 10 is not confined simply to the Act. It contains two further provisions dealing with controlled substances: § 35–7–1061 ("Pilot program for real-time database data access") and § 35–7–1062 ("Pilot program for implementation assistance").[4]

[¶ 36] Turning to the confines and actual language of the Act, it is divided into ten articles.[5] Section 35–7–1042 is found in arti-

---

4. The Act is defined in Wyo. Stat. Ann. § 35–7–1002(a)(xxviii)(LexisNexis2009) to mean §§ 35–7–1001 through 35–7–1060.

5. These articles are easily distinguishable from the overriding statutory articles by the fact that the word "article" is written in italics demarcat-

ed by a roman numeral, as opposed to the overriding statutory articles, which are printed in regular script and demarcated by numbers. Also, the Act articles begin with I and end with X, while the overriding statutory articles continue numerically from 10 to 11.

cle V. By its language, § 35–7–1042 is limited in scope to offenses "under this article." Considering the structure of the Act, the term "this article" as used in § 35–7–1042 looks to mean article V of the Act. Beyond the plain language, we find it is unlikely, too, that the Wyoming Legislature intended for § 35–7–1042 to apply to all provisions in statutory Article 10 in light of the fact that Article 10 contains provisions outside the confines of the Act.

[¶ 37] Even if § 35–7–1042 applied to all provisions contained in statutory Article 10, it still would not apply given the facts of this case. The substantive offenses Baker was charged with violating are contained in § 35–7–1059. This section is found in article IX of the Act and contains its very own conspiracy provision, which states: "It is unlawful for any person to knowingly or intentionally: ... Conspire with or aid another to engage in a clandestine laboratory operation." § 35–7–1059(a)(iv). By well-settled rules of statutory construction, the specific statutory provision always prevails over a more general statutory provision. *See e.g. Schafer v. State*, 2008 WY 149, ¶¶ 13–15, 197 P.3d 1247, 1250–51 (Wyo.2008). Thus, we conclude that § 35–7–1042 is inapplicable in this instance.

[¶ 38] The fundamental problem of this case is this: Counts III and IV charged Baker with conspiracy to possess precursors and laboratory equipment or supplies with the intent to engage in a clandestine laboratory operation. The conspiracies charged, however, are not crimes unless prohibited by the conspiracy provision of § 35–7–1059(a)(iv). Under the language of § 35–7–1059(a)(iv), this is not the case. As defined by Wyo. Stat. Ann. § 35–7–1058(a)(ii) (Lexis-Nexis 2009), "clandestine laboratory operation" means:

§ 35–7–1058. Definitions.

(a) As used in this article:

. . . .

(ii) "Clandestine laboratory operation" means:

(A) Purchasing or procuring chemicals, supplies, equipment or a labora-tory location for the illegal manufacture of controlled substances;

(B) Transporting or arranging for the transportation of chemicals, supplies or equipment for the illegal manufacture of controlled substances;

(C) Setting up supplies or equipment for the illegal manufacture of controlled substances; or

(D) Distributing or disposing of chemicals, equipment, supplies, or products used in or produced by the illegal manufacture of controlled substances

The crime of conspiracy under § 35–7–1059, as defined by the legislature, is comprised of conspiring to engage in the purchase, procurement, transportation, or distribution of chemicals, supplies, or laboratory equipment associated with the manufacture of controlled substances, or conspiring to set up equipment or supplies in preparation for the manufacture of controlled substances.

[¶ 39] From this language, it is apparent that Baker's charged conduct of conspiring to possess precursors and laboratory equipment or supplies is not delineated as a crime under the conspiracy provision of § 35–7–1059(a)(iv). The end result is that Baker was charged with and subsequently convicted of crimes that do not legally exist. Lacking a legal basis, those convictions must be reversed, and Baker should be sentenced accordingly.

### Ineffective Assistance of Counsel

[¶ 40] Next, Baker argues that he received ineffective assistance of counsel at trial because his· trial attorney insisted that § 35–7–1042 was the correct conspiracy statute. When an appellant brings a claim of ineffective assistance of counsel for the first time on appeal, this Court conducts a *de novo* review of the facts pertinent to the claim of ineffective assistance. *Eaton v. State*, 2008 WY 97, ¶ 36, 192 P.3d 36, 61 (Wyo.2008). Furthermore, we have adopted the two-part test advanced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Strickland* requires that to prove ineffective assistance of counsel, an appellant must prove first that counsel's performance was deficient. This requires showing that

counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment. Second, an appellant must prove that the deficient performance prejudiced the defense in such a manner as to deprive the appellant of a fair trial. *Pendleton v. State*, 2008 WY 36, ¶ 20, 180 P.3d 212, 218–219.

We examine the conduct of defense counsel in light of all the circumstances in determining whether the identified acts or omissions fall outside the ambit of professionally competent assistance, bearing in mind the function of counsel is to make the adversarial testing process work in every case. We do not evaluate the efforts of counsel from a perspective of hindsight but, rather, we endeavor to reconstruct the circumstances surrounding counsel's challenged conduct and evaluate the professional efforts from the perspective of counsel at the time. "We invoke a strong presumption that counsel rendered adequate and reasonable assistance making all decisions within the bounds of reasonable professional judgment." *Gist [v. State ]*, 737 P.2d [336,] 342 [ (Wyo.1987) ].

*Bloomquist v. State*, 914 P.2d 812, 820 (Wyo. 1996) (internal citations omitted).

[¶ 41] The burden of proving that counsel was ineffective rests entirely on the appellant. *Martinez v. State*, 2006 WY 20, ¶ 23, 128 P.3d 652, 663 (Wyo.2006). The appellant must also demonstrate the existence of a reasonable probability that, absent the deficiency in counsel's performance, the result of the proceedings would have been different. A failure to make the required showing of either deficient performance or sufficient prejudice defeats an ineffectiveness claim. An ineffectiveness claim may be disposed of solely on the ground of lack of sufficient prejudice. *Id.*

[¶ 42] Considering that we have determined that § 35–7–1042 was the incorrect conspiracy statute to be applied to Baker's case, and considering that Baker's attorney insisted that § 35–7–1042 was the correct conspiracy to be applied, we conclude that Baker's trial counsel's performance was deficient. However, it tempers our analysis of this issue when also taking into consideration that we have determined that the alternative statute offered (§ 6–1–303) was also inapplicable. Further tempering our analysis is the fact that Baker was properly convicted of one count of possession and two counts of child endangerment resultant from the confiscation of the items consistent with the manufacture of methamphetamine. Thus, although counsel's performance may have been deficient in insisting on the wrong statute, we cannot conclude that absent that deficiency, the result of the proceedings would have been altogether different—i.e., resulted in acquittal, or that Baker was ultimately prejudiced. *See Bromley v. State*, 2007 WY 20, ¶ 35, n. 1, 150 P.3d 1202, 1213, n. 1 (Wyo. 2007).

*Merger*

[¶ 43] In his final argument, Baker contends that Counts II, III, and IV of the criminal information—essentially, the conspiracy counts-should merge for the purposes of charging and sentencing. Considering our analysis of the applicable statutes, Baker's charged conduct of conspiring to possess precursors and laboratory equipment or supplies is not, as we stated above, "delineated as a crime under the conspiracy provision of § 35–7–1059(a)(iv)" Thus, the charges and convictions under that statute are reversed, and Baker should be sentenced accordingly.

**CONCLUSION**

[¶ 44] The evidence seized during the warrantless search of Baker's home should not have been suppressed, as his live-in girlfriend's consent was valid. Furthermore, Baker's two convictions for child endangerment stand, and the court's instructions on those charges were appropriate. We reverse Baker's convictions on Counts III and IV because the incorrect conspiracy statute was applied. Because of this, Baker's trial counsel was deficient, though he did not suffer any prejudice. We remand to the district court to sentence Baker in accordance with this opinion.