Michael Howard BILDERBACK
II, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 99–231.

Supreme Court of Wyoming.

Nov. 8, 2000.

Rehearing Denied Dec. 15, 2000.

Representing Appellant: Sylvia Lee Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; Diane E. Courselle, Director of the Defender Aid Program; and Gordon Ellis and Vaughn Neubauer, Student Interns, for the Defender Aid Program.

Representing Appellee: Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Kimberly A. Baker, Senior Assistant Attorney General; Theodore E. Lauer, Director of the Prosecution Assistance Program; and Jalie Mei-necke, Student Intern, for the Prosecution Assistance Program.

Before LEHMAN, C.J., and THOMAS, GOLDEN, HILL, and KITE, JJ.

KITE, Justice.

While on parole from various felony convictions, Appellant Michael Howard Bilderback II went on a criminal rampage which ended in the shooting of a Wyoming highway patrolman. A jury convicted him of attempted second-degree murder, use of a firearm while committing the felony of attempted second-degree murder, and concealing stolen property. The trial court sentenced him on each charge and ordered that the sentences be served consecutively. Mr. Bilderback appeals, raising various objections to the fairness of his trial including the claim that his convictions for attempted second-degree murder and use of a firearm in the commission of a felony should have merged for sentencing purposes. We affirm his convictions on all charges. However, we vacate the sentence for use of a firearm in the commission of a felony as constituting double jeopardy because, for the purpose of sentencing, that charge merged with the attempted second-degree murder charge.

## ISSUES

Mr. Bilderback presents these issues for our review:

### ISSUE I

Was trial counsel ineffective and Mr. Bilderback deprived of a fair trial, when counsel failed to request lesser included charges, when there was substantial evidence presented by both prosecution and defense that Mr. Bilderback lacked malice and intent to kill, essential elements of the crime of conviction?

### ISSUE II

Did the trial court commit per se reversible error when it instructed the jury that it might infer the intent to kill from the use of a weapon, where an unsuccessful attempt was charged?

## ISSUE III

Did the prosecution commit prosecutorial misconduct when it elicited testimony regarding Mr. Bilderback's request for counsel to create an inference of guilt?

## ISSUE IV

The trial court violated the prohibitions against double jeopardy found in the Fifth Amendment to the United States Constitution and Article One, Section Eleven of the Wyoming Constitution when it ordered that sentences for attempted second degree murder under Wyoming Statutes §§ 6–1–301(a)(i) and 6–2–104 and use of a firearm while committing a felony under Wyoming Statute § 6–8–101(a) run consecutively when the use of a firearm and the murder attempt were the very same act[.]

Appellee State of Wyoming rephrases the issues as follows:

I. Was Appellant denied effective assistance of counsel?

II. Did the district court err in instructing the jury that it might infer the intent to kill from all the facts and circumstances of the case, including the use of a deadly weapon in a deadly or dangerous manner?

III. Was an impermissible comment made upon any invocation of Appellant's right to silence?

IV. Did the district court violate Appellant's double jeopardy right against multiple punishments for a single offense when it imposed cumulative sentences for attempted second degree murder and for the use of a firearm in the commission thereof?

## FACTS

After committing two armed robberies and stealing two automobiles in Nebraska, Mr. Bilderback fled, driving westward through Wyoming. Accompanied by a friend, he stopped for only food, gas, and restrooms, getting no sleep for several days. He intended to go to the state of Washington. At some point during the trip, he removed a .25 caliber semiautomatic pistol from his jacket and placed it beneath his leg on the driver's seat. At about eight o'clock in the morning on Monday, January 11, 1999, Wyoming Highway Patrolman Howard Parkin clocked Mr. Bilderback's car traveling ninety miles per hour as it approached Douglas. He turned on his emergency lights and siren and followed the car. Mr. Bilderback pulled off the interstate into the right emergency lane, stopped his vehicle, and rolled down the driver's window. Officer Parkin, who was wearing his uniform and badge, stopped behind Mr. Bilderback's car, got out of his car, walked to Mr. Bilderback's car, and leaned forward to speak to the driver. Mr. Bilderback turned toward the window, pointed the pistol at Officer Parkin, and shot the officer point blank in the face. Officer Parkin fell to the ground, drew his gun, and fired at Mr. Bilderback's car as it drove away. Mr. Bilderback left the interstate at the next exit and drove north on State Highway 59. He was later apprehended after being chased on State Highway 59, leaving the road, and driving across the prairie until his car got hung up on a railroad track. Mr. Bilderback threw his gun from the moving vehicle before the chase ended. At the trial, Mr. Bilderback denied that he shot Officer Parkin by accident or involuntarily.

## DISCUSSION

### A. Ineffective Assistance of Counsel

First, Mr. Bilderback complains that he was denied his constitutional right to effective assistance of counsel because his attorney failed to request instructions on attempted voluntary manslaughter and aggravated assault and battery as lesser-included offenses. The standard of review we apply to claims of ineffective assistance of counsel is set forth in *Sorensen v. State*, 6 P.3d 657, 660 (Wyo.2000), where we recognized that appellate courts should be extremely reluctant to find an appellant's trial counsel ineffective.[1] We do not evaluate the counsel's

---

1. "When reviewing a claim of ineffective assistance of counsel, the paramount determination is whether, in light of all the circumstances, trial counsel's acts or omissions were outside the wide range of professionally competent assistance. The reviewing court should indulge a strong pre-

performance from a perspective of hindsight, and there is a strong presumption that the counsel made all decisions within the bounds of reasonable professional judgment. *Dickeson v. State*, 843 P.2d 606, 609 (Wyo.1992); *Gist v. State*, 737 P.2d 336, 342 (Wyo.1987). Here, the effectiveness of Mr. Bilderback's counsel is evidenced by the fact that his client was charged with attempted first-degree murder, but was convicted of only the lesser offense of attempted second-degree murder.

 Although we cannot determine from the record what instructions were offered or rejected,[2] we can conclude that, even if it had been offered, the trial court was not required to give an attempted voluntary manslaughter instruction because the evidence did not support such an instruction. A lesser-included offense instruction must be given only when there is evidence which would justify the trier of fact in acquitting the accused of the greater offense and convicting him on the lesser offense. *Carey v. State*, 984 P.2d 1098, 1101 (Wyo.1999). An attempted voluntary manslaughter instruction would have been appropriate only if Mr. Bilderback had claimed some other reason for his actions other than the malicious action contained within the attempted second-degree murder elements. Certainly, his claim that he was frightened by unknown persons in Nebraska could not provide justification for shooting a law enforcement officer who stopped him for speeding. On the claim that the aggravated assault and battery instruction should have been given, we conclude it is not a lesser-included offense of attempted second-degree murder. If the lesser offense includes an element which the greater offense does not, it is not a lesser-included offense. *State v. Keffer*, 860 P.2d 1118, 1134 (Wyo.1993). Aggravated assault and battery can be charged under four separate paragraphs of Wyo. Stat. Ann. § 6–2–502(a) (LEXIS 1999). Paragraph (i) requires serious bodily injury, paragraphs (ii) and (iii) require use or threat of use of a deadly weapon, and paragraph (iv) requires bodily injury to a pregnant woman. Attempted second-degree murder does not have these elements. Wyo. Stat. Ann. §§ 6–1–301(a), 6–2–104 (LEXIS 1999). We conclude the trial court would not have been justified in giving either suggested instruction and the counsel's representation cannot be found ineffective under the applicable standards.

### B. Inference Instruction Was Proper

 The trial court gave the following instruction to which Mr. Bilderback now objects:

The jury may infer the existence of premeditation, malice, and the intent to kill from all the facts and circumstances of the case. Specifically, an inference of malice, or an inference of the intent to kill, though not an inference of premeditation, may arise from the use of a deadly weapon in a deadly or dangerous manner. Such inferences are permissive, rather than mandatory. In other words, the jury is not required to make such inferences.

This instruction was proper and met the standard set forth in *Harley v. State*, 737 P.2d 750, 754–56 (Wyo.1987), which followed the United States Supreme Court's decision in *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). The instruction made it clear the inference was permissive only. The inference was a rational one based on common sense; e.g., malice can be inferred from the use of a deadly weapon in a deadly or dangerous manner. The facts of this case make that inference imminently reasonable. Mr. Bilderback was a fugitive who was driving a stolen car and had a pistol positioned under his leg. When stopped for a traffic violation, he shot the officer in the face without provocation or warning, and then he fled. Under these facts and circumstances, it was reasonable for the trial court to instruct the jury it could

---

sumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable judgment."
*Sorensen*, 6 P.3d at 660 (quoting *Jackson v. State*, 902 P.2d 1292, 1295 (Wyo.1995)) (citations omitted).

**2.** The transcript does reflect that the trial court asked the defense counsel if he was satisfied with the jury instructions as prepared and the defense counsel said he was satisfied and did not wish to propose any additional instructions at that time.

conclude the defendant acted with malice and intent to kill.

### C. No Improper Comment on Mr. Bilderback's Exercise of His Right to Counsel

■ During the trial, the policeman who interviewed the defendant testified that when the interview began Mr. Bilderback did not request an attorney and he answered the questions asked after being given his *Miranda* warning. Then later in the interview, Mr. Bilderback did request an attorney, and the interview ended. The prosecution made no further reference to or comment on Mr. Bilderback's refusal to answer further questions or his exercise of his right to remain silent and have counsel. Despite not objecting to this testimony at the trial, Mr. Bilderback now asserts that the prosecution's actions and the policeman's testimony constituted both improper comment by the state upon an accused person's exercise of his right to remain silent and prejudicial error under *Tortolito v. State*, 901 P.2d 387 (Wyo.1995). We disagree. The policeman made no reference to Mr. Bilderback's remaining silent; he referenced only his request for counsel. The testimony was offered to explain how the interview ended, and the prosecution made no further reference of any kind to the request for counsel. Neither *Tortolito* nor any other authority stands for the proposition that any reference at all to the defendant asking for counsel is prejudicial error, and we decline to establish such a rule. *See Beartusk v. State*, 6 P.3d 138, 144 (Wyo.2000).

### D. Cumulative Sentence for Attempted Second–Degree Murder and Use of Firearm in the Commission Thereof

■ Mr. Bilderback next contends his constitutional right not to be twice placed in jeopardy was violated because the same act resulted in convictions and sentencing under two different statutes. We have repeatedly noted the three-fold impact of the double jeopardy clause. We have said it prohibits a second prosecution for the same offense after an acquittal, a second prosecution for the same offense after a conviction, and multiple punishments for the same offense. *Frenzel*

*v. State*, 938 P.2d 867, 868 (Wyo.), *cert. denied*, 522 U.S. 959, 118 S.Ct. 388, 139 L.Ed.2d 303 (1997). In this case, we are concerned with only the third aspect of the protection against double jeopardy; that is, multiple punishments for the same offense and whether the two convictions should have merged for sentencing purposes.

The standard of review for determinations regarding the doctrine of merger was set forth in *Rouse v. State*, 966 P.2d 967, 969–70 (Wyo.1998) (some citations omitted):

The doctrine of merger embodies that aspect of constitutional assurances against exposure to double jeopardy which precludes alternative legislative proscriptions of a single offense. If elements of two charged offenses are identical or if the elements of one charged offense constitute an indispensable subset of elements requisite to conviction of a second offense, a trial court cannot lawfully impose separate sentences upon conviction of both. If, on the other hand, this "statutory elements" test reveals disparate component parts to the two charged offenses, it may be presumed that the legislature intended separate or cumulative punishments upon convictions of both. Under such circumstances, the fact that a continuing course of conduct engendered several charges creates no impediment to multiple convictions and sentences.

The statutory elements test is derived from *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) and is susceptible to a more succinct statement:

"The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."

*State v. Keffer*, 860 P.2d 1118, 1130 (Wyo. 1993) (quoting *Blockburger*, 284 U.S. at 304, 52 S.Ct. 180). At the threshold, appellate resort to the statutory elements test in order to resolve the issue of merger would appear to be a pure question of law

calling for de novo review of the trial court's conclusions. Such an analysis may indeed suffice when the question of merger concerns the entitlement of the State to charge a defendant with separate crimes and have each charge submitted to the jury.

The question of merger as a bar to multiple sentences for the same act, however, summons a more complex appellate standard of review. As a practical matter, in appeals alleging imposition of multiple sentences for a single act, the focus necessarily expands to embrace those facts proven at trial. The ultimate question becomes whether those facts reveal a single criminal act or multiple and distinct offenses against the victim or victims and hence the State.

*Owen* [*v. State*, 902 P.2d 190 (Wyo. 1995),] and *Rivera* [*v. State*, 840 P.2d 933 (Wyo.1992),] contemplate multiple charges where guilt of charge A "was a part of and necessary to, the accomplishment" of charge B. *Rivera*, 840 P.2d at 943 (quoted in *Owen*, 902 P.2d at 194). For example, Mr. Rivera was convicted of indecent liberties with a minor for pulling down his victim's blue jeans and panties, but was also convicted of first-degree sexual assault for the subsequent penetration of the same victim. Since the act of committing indecent liberties was a necessary and indispensable precursor to the sexual assault, we held that the offenses merged for purposes of sentencing. Restated, our rule is that when the facts show that the defendant's act in violation of crime B could not have been accomplished in any way other than through prior violation of crime A, the two charges must merge for purposes of sentencing. Such a merger is mandatory only when the facts necessary to prove charge A describe the only possible way in which crime B may be committed.

The statutes involved in Mr. Bilderback's two charges and convictions provide as follows:

Whoever purposely and maliciously, but without premeditation, kills any human being is guilty of murder in the second degree, and shall be imprisoned in the penitentiary for any term not less than twenty (20) years, or during life.

Section 6–2–104.

(a) A person is guilty of an attempt to commit a crime if:

(i) With the intent to commit the crime, he does any act which is a substantial step towards commission of the crime. A "substantial step" is conduct which is strongly corroborative of the firmness of the person's intention to complete the commission of the crime; or

(ii) He intentionally engages in conduct which would constitute the crime had the attendant circumstances been as the person believes them to be.

Section 6–1–301(a).

(a) A person who uses a firearm while committing a felony shall be imprisoned for not more than ten (10) years in addition to the punishment for the felony. For a second or subsequent conviction under this section a person shall be imprisoned for not more than twenty (20) years in addition to the punishment for the felony.

(b) Subsection (a) of this section does not apply to those felonies which include as an element of the crime the use or possession of a deadly weapon.

Wyo. Stat. Ann. § 6–8–101 (LEXIS 1999).

Under the statutory elements test alone, the two charges have different elements. The state argues that the test allows separate sentences and effect must be given to the legislature's intent to provide a separate punishment when a person uses a firearm while committing a felony. However, legislative intent cannot overcome the constitutional prohibition against double jeopardy. In addition, § 6–8–101(b) indicates the legislature did not intend additional punishment when the first felony has the use of the deadly weapon as one of its elements. Although attempted second-degree murder does not have that statutory element, under the facts of this case, Mr. Bilderback did not commit any other act which could have constituted attempted second-degree murder other than using the firearm. Our merger analysis does

not end with the application of the statutory elements test.

Here, Mr. Bilderback does not argue that the state could not charge and the jury could not convict on both attempted second-degree murder and the use of a firearm while committing a felony. Instead, he claims those crimes must merge for sentencing under our precedent. A jury found Mr. Bilderback guilty of both attempted second-degree murder and using a firearm in the commission of a felony. The trial court sentenced him to a term of fifty years to life for the attempted second-degree murder and a term of nine to ten years for using a firearm while committing the attempted second-degree murder with the terms to be served consecutively. He contends the two charges were for the "same act" and, when he was given consecutive sentences for the two convictions, his right to not suffer double jeopardy for the same act was violated. Appellate review of that issue involves the in-depth factual analysis set forth above in *Rouse.*

■ It is undisputed that Mr. Bilderback's only act which caused him to be found guilty of attempted second-degree murder was the shooting of Officer Parkin. Obviously, under the facts in this record, that shooting could not have been accomplished without the use of the firearm. The state presents a theoretical argument that not all attempted second-degree murder scenarios necessarily involve the use of a firearm, and this is certainly true.· But that is not the correct analysis. We must carefully examine the facts of *this* case and determine whether *this* defendant's offenses under § 6–1–301(a)(i) and § 6–2–104 could have occurred without the defendant necessarily committing an offense under § 6–8–101(a). They could not. An apt description of the doctrine of merger of offenses for sentencing is found in *Commonwealth v. Whetstine*, 344 Pa.Super. 246, 496 A.2d 777 (1985), as that doctrine has been developed in Pennsylvania.

> In deciding whether offenses merge, the question is whether the offenses charged "necessarily involve" one another, or whether any additional facts are needed to prove additional offenses once the primary offense has been proven. In deciding merger questions, we focus not only on the similarity of the elements of the crimes, but also, and primarily, on the facts proved at trial, for the question is whether those facts show that in practical effect the defendant committed but a single criminal act.
>
> Additionally, we note that analysis of merger claims traditionally has revolved around the concept of injury to the sovereign; in order to support the imposition of more than one sentence, it must be found that the defendant's conduct constituted more than one injury to the Commonwealth.

*Whetstine,* 496 A.2d at 779–80 (citations omitted).

We hold the state was entitled to charge both offenses and it was entitled to have them presented to the jury. The state had no way of anticipating how the evidence would be perceived by a jury or what the jury's conclusion might be with respect to the charged offenses. Once the jury convicted Mr. Bilderback of both charges, however, the charges merged for punishment purposes, and only one sentence should have been imposed. In the context of the *Whetstine* rationale, only one injury occurred to the state in this instance. We, therefore, vacate the sentence for using a firearm in the commission of a felony. This acknowledges Mr. Bilderback's right not to be twice placed in jeopardy for the same offense and affords an adequate accommodation to the constitutional prohibitions.

## CONCLUSION

There was no reversible error in connection with Mr. Bilderback's trial and convictions. The Judgment and Sentence is affirmed as modified.