2011 WY 123

**David Dale BAKER, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

Nos. S–10–0229, S–10–0230.

Supreme Court of Wyoming.

Aug. 25, 2011.

Representing Appellant: David Dale Baker, pro se.

Representing Appellee: Bruce A. Salzburg, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Jenny Lynn Craig, Assistant Attorney General.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶ 1]   In these consolidated appeals, David Dale Baker challenges the district court's denial of his motion to correct an illegal sentence.  He also claims that the district court erred when it did not grant him access to e-mail correspondence between the Wyoming Department of Corrections and the Wyoming Public Defender's Office.  Having considered his claims and contentions, we will affirm the district court's decisions.

### ISSUES

[¶ 2]   In Docket No. S–10–0229, Mr. Baker states the issues as follows:

1.   The rule of *Apprendi* is applicable where the consecutive sentence Appellant received is beyond the statutory maximum, and was not presented to the jury for the enhancement of the sentence.

2.   It was a violation of the Constitution where Appellant was sentenced with, but did not receive any notice that he was being charged with, nor was he convicted by the jury of a cumulative crime.

3.   The Court could not sentence Appellant to a consecutive sentence where there is no statutory authority to do so.

4.   The Double Jeopardy Clause was violated as the sentences Appellant received were required to merge where conviction of the underlying felony was required in order to convict and impose a sentence for child endangerment.

In Docket No. S–10–0230, Mr. Baker lists three issues:

1.   It was clear error for the Court to deny Appellant access to the Court by ruling the Court had no jurisdiction to order the Wyoming Honor Farm to produce documents in its possession relating to Appellant.

2.   Pursuant to Wyoming law Appellant has a Constitutional right to any and all documents referencing and identifying him in the possession of the Wyoming Department of Corrections.

3.   Appellant has a Constitutional right to the required service of all documents filed into the District Court.

### FACTS

[¶ 3]   In August, 2007, Mr. Baker was convicted on six methamphetamine-related charges.  He was sentenced to imprisonment for six to eight years on each of the first four charges, with the sentences to be served concurrently.  He was sentenced to imprisonment for eighteen to twenty-four months

on each of the last two charges, with the sentences to be served concurrently, but consecutive to the sentences on the first four counts. Mr. Baker appealed. We reversed his convictions on two of the charges, and affirmed the other four. *Baker v. State,* 2010 WY 6, ¶ 39, 223 P.3d 542, 557 (Wyo.2010) (*Baker I*). We remanded the case to the district court for resentencing in accordance with our opinion. *Id.,* ¶ 44, 223 P.3d at 558. On remand, the district court imposed the same sentences as before on the remaining four charges. Accordingly, Mr. Baker was sentenced to six to eight years on each of the first two counts, to be served concurrently; and eighteen to twenty-four months on each of the last two counts, to be served concurrently with each other, but consecutive to the sentences on the first two counts.

[¶ 4] On April 28, 2010, Mr. Baker, acting *pro se,* filed a motion for sentence reduction pursuant to W.R.Cr.P. 35(b). He asked the district court to suspend his sentences and place him on supervised probation or, in the alternative, to order that the sentences for all four counts be served concurrently. The district court scheduled a hearing on the motion on August 2, 2010. At that hearing, Mr. Baker indicated that one of the issues he had raised in his motion for sentence reduction pursuant to W.R.Cr.P. 35(b) should be considered as a motion to correct an illegal sentence pursuant to W.R.Cr.P. 35(a). The district court permitted Mr. Baker to present argument under either rule or both. After considering Mr. Baker's argument on the motion to reduce his sentence, the district court concluded as follows:

> [T]he sentences imposed appear to be appropriate; they were appropriate at the time; not excessive, within the lower range of the sentences [provided by statute]. I acknowledge that Mr. Baker has done well at the Honor Farm; but it is presumed that people will do well. And the reward for that is the good time that is provided by the Department of Corrections. So I think the sentences imposed were appropriate, remain appropriate, and I will not grant any further reduction of sentence.

With regard to Mr. Baker's motion to correct an illegal sentence, the district court conclud-

ed that "the sentence is not illegal. And insofar as the matter is a request to correct an illegal sentence, that request is denied." On August 6, 2010, the district court entered its order confirming its denial of the motions. In Docket No. S–10–0229, Mr. Baker challenges the district court's denial of his motion to correct an illegal sentence. We note that he has not pursued an appeal of the denial of his motion for sentence reduction.

[¶ 5] In addition to seeking reduction and correction of his sentence in the district court, Mr. Baker also petitioned the United States Supreme Court to review his case through a writ of certiorari. In connection with his petition, Mr. Baker requested that the Wyoming Public Defender's office provide him with complete copies of his trial and appellate record. Although many documents were provided to Mr. Baker, he continued to assert that other documents had been withheld. He filed a motion in the district court for an order to compel the Wyoming Public Defender's Office to provide him with "the Complete Record," specifically including "Suppression Hearing Photographs, . . . any and all E–Mails, Confidential Documents, and Photographic Evidence pertaining to any proceedings." The district court considered this motion during the hearing held on August 2, 2010. Information provided during the hearing indicated that Mr. Baker had been given nearly all of the pertinent documents, with the exception of several photographs the prosecution had provided to the Wyoming Public Defender's Office prior to Mr. Baker's trial. For reasons left unclear, the Wyoming Public Defender's Office no longer had those photographs. At the request of the district court, the prosecutor provided two Compact Disks containing the photographs to the Wyoming Public Defender's Office. The CD's were then sent to Mr. Baker.

[¶ 6] At this point, however, Mr. Baker was an inmate at the Wyoming Honor Farm, and was not allowed to possess or use CD's. As a result, Mr. Baker's case worker at the Wyoming Honor Farm returned the two CD's to the Wyoming Public Defender's Office. According to Mr. Baker, the Wyoming Public Defender's Office eventually provided

him prints of the photographs. In the meantime, however, Mr. Baker filed a "Motion for the Court to Issue a *Subpoena Duces Tecum*," asking the district court to direct the Wyoming Honor Farm to provide him with copies of all e-mail correspondence between his case worker and the Wyoming Public Defender's Office concerning the CD's.

[¶ 7] The district court held a hearing on this motion on September 2, 2010. At the hearing, Mr. Baker made it clear that he no longer sought this information as part of his effort to obtain review of his case by the United States Supreme Court.[1] Instead, he sought the e-mail correspondence to support a complaint against the Wyoming Public Defender's Office that he intended to file with the Wyoming State Bar. Considering Mr. Baker's stated purpose, the district court found that the requested subpoena was "not appropriate" in the context of Mr. Baker's criminal matter, and denied the motion. In Docket No. S–10–0230, Mr. Baker challenges that ruling.

### DISCUSSION

#### *Denial of Motion to Correct Illegal Sentence*

[¶ 8] After two of Mr. Baker's convictions were reversed in *Baker I*, ¶ 39, 223 P.3d at 557, he remained convicted on four charges: Count I for possession of a controlled substance precursor with the intent to engage in a clandestine laboratory operation, in violation of Wyo. Stat. Ann. § 35–7–1059(a)(i) (LexisNexis 2007); Count II for conspiracy to engage in a clandestine laboratory operation, in violation of Wyo. Stat. Ann. § 35–7–1059(a)(iv); and Counts V and VI, child endangerment, in violation of Wyo. Stat. Ann. § 6–4–405(a)(ii). On remand, he was sentenced to terms of six to eight years imprisonment on each of the first two counts, with the two sentences to run concurrently. He was sentenced to terms of eighteen to twenty-four months on each of the last two counts, with these two sentences to run concurrently, but consecutive to the sentences on the first two charges.

[¶ 9] Mr. Baker's appeal issues revolve around the district court's order that his sentences on the last two charges would be served consecutively to the sentences on the first two charges. His brief includes this explanation of his claim:

> The maximum sentence allowed for Counts V and VI pursuant to W.S. § 6–4–405(c) is five (5) years incarceration. By the court sentencing [Mr. Baker] to consecutive sentences on Counts V and VI to Counts I and II [Mr. Baker] is now serving a maximum sentence of ten (10) years, double of that allowed for the maximum by statute.

On that basis, he claims that his sentences are illegal, and the district court erred when it denied his motion to correct those sentences.

[¶ 10] We review such claims using the following standard of review:

> This Court reviews a trial court's denial of a motion to correct an illegal sentence by using an abuse of discretion standard. However, this discretion is limited to a determination by the trial court as to whether the sentence was legal or illegal.... An illegal sentence is one which exceeds statutory limits, imposes multiple terms of imprisonment for the same offense, or otherwise violates constitutions or the law. Whether a sentence is illegal is determined by referencing the applicable statute or constitutional provisions, and is subject to statutory interpretation. The determination of whether the appropriate rule was applied to a set of facts is a question of law, requiring *de novo* review.

*McDaniel v. State*, 2007 WY 125, ¶¶ 6–7, 163 P.3d 836, 838 (Wyo.2007) (internal citations and punctuation omitted).

[¶ 11] Mr. Baker contends that his consecutive sentences violate the holding in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000), in which the United States Supreme Court explained that, pursuant to the Sixth Amendment to the United States Constitution, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a

---

1. Mr. Baker's petition for a writ of certiorari was denied by the United States Supreme Court on October 4, 2010. *Baker v. Wyoming,* — U.S. ——, 131 S.Ct. 118, 178 L.Ed.2d 73 (2010).

crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Mr. Baker argues that the imposition of consecutive sentences increased the penalty for his crimes beyond the prescribed statutory maximum, and therefore, *Apprendi* mandates that the decision to impose consecutive sentences be made by a jury, not the district court.

[¶ 12] We considered this same contention in *Gould v. State*, 2006 WY 157, ¶ 24, 151 P.3d 261, 268 (Wyo.2006):

The argument that judicial imposition of consecutive sentences violates the Sixth Amendment has been soundly rejected by other courts. The Hawaii Supreme Court stated: "[O]ther jurisdictions, including several federal circuits, have aphoristically dismissed the proposition that either *Blakely* [*v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004)] or *Apprendi* proscribes consecutive term sentencing, and this court does likewise." *State v. Kahapea*, 111 Hawai'i 267, [279,] 141 P.3d 440[, 452] (Haw.2006), and cases cited therein. We follow suit and conclude the district courts did not improperly enhance the appellants' sentences under the Sixth Amendment and the rationale of *Apprendi* or *Blakely* simply by imposing consecutive sentences for their separate crimes.

We adhere to that ruling, and reject Mr. Baker's contention.

[¶ 13] Mr. Baker's second issue is a variation on his first. Based again on *Apprendi*, he claims that he was improperly denied prior notice that he was charged with a crime for which the penalty could be enhanced by consecutive sentencing. However, consecutive sentences are not enhanced sentences subject to the rationale of *Apprendi*. *Gould*, ¶¶ 20–24, 151 P.3d at 267–68. Mr. Baker's second issue is, therefore, meritless.

[¶ 14] Mr. Baker's third issue is a claim that the district court had no authority to impose consecutive sentences. However, "we have long said that the district court has discretion in determining whether the sentences will be served consecutively or concurrently." *Gould*, ¶ 24, 151 P.3d at 267–68,

citing *Doles v. State*, 2002 WY 146, ¶ 16, 55 P.3d 29, 33 (Wyo.2002), and *Eaton v. State*, 660 P.2d 803, 806 (Wyo.1983). Mr. Baker's third issue also lacks merit.

[¶ 15] Finally, in Mr. Baker's fourth issue, he claims that his sentences violate his rights against being placed in double jeopardy because they represent multiple punishments for the same offense. He contends that he could not have been convicted on charges of child endangerment unless he was also convicted on charges relating to the manufacture of methamphetamine. He therefore contends that the district court was required to merge his convictions for purposes of sentencing.

[¶ 16] In a previous case, we explained:

Merger of sentences implicates a defendant's constitutional right to be free of multiple punishments for the same offense. *Bilderback v. State*, 13 P.3d 249, 253 (Wyo. 2000). This right is one component of the constitutional prohibition against double jeopardy. *Id.* Consequently, the analytical framework necessary to resolve this issue is derived from the elements test set forth by the United States Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), and subsequently adopted by this Court. *Bilderback*, 13 P.3d at 253. Pursuant to the elements test, two offenses are different when each requires proof of an element that the other does not. *Id.*

*Najera v. State*, 2009 WY 105, ¶ 11, 214 P.3d 990, 993–94 (Wyo.2009). We therefore begin this analysis with a review of the pertinent statutes, in order to determine whether the offenses are different because each requires proof of an element that the other does not.

[¶ 17] On Count I, Mr. Baker was convicted of possession of a controlled substance precursor with the intent to engage in a clandestine laboratory operation, in violation of Wyo. Stat. Ann. § 35–7–1059(a)(i), which provides that it is unlawful for any person to knowingly or intentionally "Possess a List I or II controlled substance precursor with the intent to engage in a clandestine laboratory operation." Based on this statute, the jury was instructed that, to find Mr. Baker guilty

of this charge, it must find the following elements:

1. From on or about the 1st day of February, 2006 through on or about the 20th day of December, 2006;

2. In Natrona County, Wyoming;

3. The Defendant, David Dale Baker;

4. Knowingly or intentionally possessed a List II controlled substance precursor, to wit: Acetone and/or Iodine;

5. With the intent to engage in a clandestine laboratory operation.[2]

[¶ 18] On Count II, Mr. Baker was convicted of conspiracy to engage in a clandestine laboratory operation, in violation of Wyo. Stat. Ann. § 35–7–1059(a)(iv), which provides that it is unlawful for any person to knowingly or intentionally "Conspire with or aid another to engage in a clandestine laboratory operation." Based on this statute, the jury was instructed that, to find Mr. Baker guilty of this charge, it must find the following elements:

1. From on or about the 1st day of February, 2006 through on or about the 20th day of December, 2006;

2. In Natrona County, Wyoming;

3. The Defendant, David Dale Baker;

4. Knowingly or intentionally agreed with one or more other persons;

5. That they, or one of them, would engage in a clandestine laboratory operation.

[¶ 19] On Counts V and VI, Mr. Baker was convicted of child endangerment, in violation of Wyo. Stat. Ann. § 6–4–405(a), which provides that "[N]o person shall knowingly and willfully cause or permit any child to: ... (ii) Remain in a room, dwelling or vehicle where the person knows methamphetamine is being manufactured or sold." The jury was instructed that, to find Mr. Baker guilty of child endangerment, it must find the following elements:

1. From on or about the 1st day of February, 2006 through on or about the 20th day of December, 2006;

2. In Natrona County, Wyoming;

3. The Defendant, David Dale Baker;

4. Did knowingly and willfully cause or permit a child, to wit: [A.L.], born [in] 1998;[3]

5. To remain in a room or dwelling where the Defendant knew that methamphetamine was being manufactured.

[¶ 20] It is readily apparent that the crime of child endangerment includes at least one element not found in the other two criminal statutes: the presence of a child. It is equally plain that the crimes of possession of a controlled substance precursor and conspiracy to engage in a clandestine laboratory operation include at least one element not found in the child endangerment statute: engaging, or intending to engage, in a clandestine laboratory operation. Mr. Baker is incorrect in asserting that he could not have been convicted of child endangerment without first being guilty of engaging in methamphetamine manufacturing. A person may be convicted of child endangerment even if he is not actively involved in the manufacturing of the drug. Under the test set forth in *Blockburger* and adopted by this Court in *Bilderback,* the offenses are different because each requires proof of an element that the other does not. The district court was not required to merge the different crimes for sentencing.

### Denial of Motion for Subpoena Duces Tecum

[¶ 21] Mr. Baker's argument in Docket No. S–10–0230 does not merit detailed discussion. He sought the e-mail correspondence only to support a complaint that he intended to file with the Wyoming State Bar against the Wyoming Public Defender's Office. Given these circumstances, the district court was correct in observing that

---

2. We note for the sake of completeness that the jury instructions also contained several clarifications and explanations of these elements, including, for example, definitions of "possession," "clandestine laboratory operation," and "List II controlled substance precursors."

3. The instructions on Counts V and VI were identical except for the naming of two different children.

"[t]here may be other venues" in which Mr. Baker would be entitled to obtain the information he sought, but his motion was "not appropriate" in the context of his ongoing criminal case.

[¶ 22] We affirm the district court's decisions in both Docket No. S–10–0229 and Docket No. S–10–0230.

BURKE, J., delivers the opinion of the Court; VOIGT, J., files a specially concurring opinion; HILL, J., files a dissenting opinion.

VOIGT, Justice, specially concurring.

[¶ 23] I agree with the result reached via the majority opinion. I write separately only to repeat the concerns about the doctrine of sentencing merger that are set forth in *Najera v. State*, 2009 WY 105, ¶ 17, 214 P.3d 990, 995 (Wyo.2009) (Voigt, C.J., specially concurring).

HILL, Justice, dissenting.

[¶ 24] I dissent because the majority opinion fails to address an issue which became readily apparent to the Court upon a close review of the record on appeal.

## FACTS AND PROCEEDINGS

[¶ 25] The matters at issue in these appeals followed on the heels of this Court's disposition of Baker's substantive appeal in *Baker v. State*, 2010 WY 6, ¶ 44, 223 P.3d 542, 558 (Wyo.2010). In that case, we reversed two of Baker's convictions and affirmed the remainder of his convictions. The matter was remanded to the district court for resentencing in accordance with that opinion. A hearing was held on April 7, 2010, to consider the sentence. At that hearing the district court took the position, as did the prosecutor, that the district court did not have the authority to resentence Baker in light of the circumstance that he stood convicted of four crimes rather than six. Thus, the district court deleted any reference to Counts III and IV and imposed the same sentences as he had when Counts III and IV were still valid. Baker's attorney argued that the district court was required to impose a sentence in light of the new circumstances in which Baker stood at the time of the instant sentencing hearing. The district court rejected that contention and did not take into account the fact that Counts III and IV were determined to have been invalid convictions.

[¶ 26] In the amended judgment and sentence upon remand entered on April 23, 2010, the district court sentenced Baker to serve two concurrent terms of six to eight years for his convictions on Counts I and II. Counts III and IV were dismissed per the direction of this Court. With respect to Counts V and VI, Baker was sentenced to two concurrent terms of 18 to 24 months, to be served consecutively to Counts I and II. Baker's original sentence was imposed on January 7, 2008, at which time he was given credit for time served of 312 days.

[¶ 27] On April 28, 2010, Baker filed a motion for reduction of sentence. The district court asked for a progress report from the Wyoming Department of Corrections, and such a report was sent to the district court. It was largely positive as to Baker's progress in the Corrections system (the exception being that Baker had tried to acquire cigarettes from family, and all tobacco products are prohibited in Wyoming Department of Corrections facilities). On July 9, 2010, Baker asked the district court to facilitate Baker's receipt of his case file so that he could prosecute a writ of certiorari to the United States Supreme Court. The Wyoming Public Defender's Office provided Baker with all the records it had. On July 20, 2010, Baker filed a motion in the district to court to have a court reporter at his hearing. On that same date, Baker filed a motion asking that his motion for reduction of sentence be granted because the prosecutor had not responded to it. On that same date, he filed a motion to appear telephonically at his hearing. Finally, on that same date, he filed an objection to the limited amount of material he received from the Wyoming Public Defender's Office in aid of his petition for writ of certiorari to the United States Supreme Court. On July 22, 2010, the prosecutor filed a pleading urging the district court to deny the motion to reduce sentence. On July 27, 2010, Baker filed a renewed motion

requesting that the motion for reduction of sentence be granted because the prosecutor had not timely responded to that motion. In Case No. S–10–0150, Baker asked this Court to grant a petition for writ of review so as to reinstate his appeal of the sentence imposed by the district court on April 23, 2010. That petition was denied by order entered on August 3, 2010, on the basis that this Court had not required the district court to conduct "a full-blown resentencing proceeding." On August 5, 2010, Baker requested a copy of his new sentence and contended that he should not have to pay for it because he had never received one. The clerk of district court answered that there was a charge for such copies that had to be paid in advance and informed Baker that he should be able to get copies from his defense attorney to whom the sentence had been sent. The Wyoming Public Defender's Office asserted that it had not received a copy of that sentence either. At that hearing, a public defender from Cheyenne stated that everything from his appellate file there had been sent to Baker, and a public defender from Casper stated that everything from his trial stage file had been sent to Baker as well. It appears from the transcript of the hearing into this matter that what Baker did not have was a copy of the original clerk's file. Public defenders do not usually make a photocopy of that file. Rather, the district court's file is used in preparing the appellate documents and then it is returned to the district court clerk.

[¶ 28] At the conclusion of that hearing, the district court ruled that:

1. The prosecutor would check into getting some photographs so that Baker had a complete record.

2. That there was no such thing as "a transcript" of the proceedings in the Supreme Court and so the district court could provide no relief in that regard.

3. The district court explained why a transcript had not been made yet of the resentencing hearing. (However, we take note here that such a transcript has subsequently been made, and it is included in the record for these appeals.)

4. The district court directed the clerk of the district court to give Baker copies of documents he needed from the district court's file, at no expense to Baker.

[¶ 29] After the district court delivered that part of its ruling, Baker presented argument on his motion for reduction of sentence. Baker first asked to amend his motion to a motion to correct an illegal sentence under W.R.Cr.P. 35(a). The district court allowed Baker to go forward and argue either or both a motion for sentence reduction and a motion to correct an illegal sentence. Baker's argument was primarily directed at the district court's refusal to sentence him to probation, given that the convictions(s) at issue in this case were: Baker's first felony convictions; because he was relatively young at the time of the crimes (he was about 38 years of age); and because Baker recognized and took responsibility for the seriousness of his crimes and was committed to his own rehabilitation. Baker also argued that his sentence should have been probation under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). I agree that Baker's contentions with respect to the *Apprendi* case are mistaken.

[¶ 30] By order entered on August 6, 2010, the district court denied both Baker's motion for reduction of sentence and his motion to correct an illegal sentence.

[¶ 31] W.R.Cr.P. 35(a) invests the district court with broad discretionary authority. However, we have held that it is in the interests of judicial economy to correct an illegal sentence even if it first comes to our attention in our examination of the appeal. See *Leger v. State,* 855 P.2d 359, 363 (Wyo. 1993); *Kahlsdorf v. State,* 823 P.2d 1184, 1190 (Wyo.1991); and *Price v. State,* 716 P.2d 324, 328 (Wyo.1986). In my view, this Court *must* review the circumstances under which this sentence was imposed whether Baker explicitly raised it or not. In this case, the source of our concern was called to the attention of the prosecutor and the district court by defense counsel. That concern was not whether or not a "full-blown" sentencing hearing should be held. Baker did not contend that a "full-blown" sentencing

hearing should be held. Rather, he asserted that the district court was required to take into account the circumstance that, at the remand hearing he stood convicted of four felonies rather than six. The prosecutor championed the position that the district court could only remove the offending convictions from the sentence but he could in no way reconsider its sentence in light of the circumstance that two of Baker's convictions had been overturned on appeal. In *United States v. Pimienta–Redondo and Pupo*, 874 F.2d 9, 12–16 (1st Cir.1989) the federal circuit court of appeals dealt with a very similar issue:

## II. DUE PROCESS

### A

Relying upon *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), appellants claim that they were denied due process of law by the district court's enhancement of their sentences on Count II. In *Pearce*, the Court addressed the due process concerns which emerge when a defendant, having obtained reversal of a conviction on appeal, is subsequently retried for, and found guilty of, the same offense, and given a stiffer sentence by the same trial judge. Recognizing the inherent potential for abuse-that a defendant might be penalized for exercising appeal rights-the Court concluded:

> Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

395 U.S. at 725, 89 S.Ct. at 2080 (footnote omitted).

It is important that the *Pearce* principle not be blown out of proportion. *Pearce* does not flatly prohibit resentencing, or even enhancement of sentence, after the accused has taken an appeal or otherwise taken advantage of some legal right. *See Chaffin v. Stynchcombe*, 412 U.S. 17, 24–28, 93 S.Ct. 1977, 1981–1983, 36 L.Ed.2d 714 (1973); *Colten v. Kentucky*, 407 U.S. 104, 114–20, 92 S.Ct. 1953, 1959–62, 32 L.Ed.2d 584 (1972); *Pearce*, 395 U.S. at 723, 89 S.Ct. at 2079; *see also Wasman v. United States*, 468 U.S. 559, 566, 104 S.Ct. 3217, 3221, 82 L.Ed.2d 424 (1984) (plurality opinion). Rather, the presumption envisioned in *Pearce* arises "only in cases in which a reasonable likelihood of vindictiveness exists." *United States v. Goodwin*, 457 U.S. 368, 373, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982). Once this presumption blossoms, the prosecution must proffer evidence to overcome it; elsewise, vindictiveness is deemed established, and the due process clause requires invalidation of the challenged action. *Pearce*, 395 U.S. at 726, 89 S.Ct. at 2081.

It follows that more than chronal proximity is required to bring *Pearce* into play; the presumption does not apply indiscriminately to all instances of detrimental action treading close upon the heels of a defendant's exercise of some legal right. *See Goodwin*, 457 U.S. at 384, 102 S.Ct. at 2494 (involving addition of felony count after defendant asked for a jury on misdemeanor charge); *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 667, 54 L.Ed.2d 604 (1978) (discussing imposition of sentence after defendant stood trial, unsuccessfully, rather than plead to lesser offense); *Chaffin*, 412 U.S. at 26–27, 93 S.Ct. at 1982–83 (involving reconviction and resentencing by jury after new trial obtained); *Colten*, 407 U.S. at 116, 92 S.Ct. at 1960 (discussing imposition of sentence after defendant's election of *de novo* "second" trial in two-tier system proved unavailing); *see also Wasman*, 468 U.S. at 566, 104 S.Ct. at 3221. As such cases betoken, the Court has been chary of extending *Pearce* to precincts where, given the totality of the circumstances, the likelihood of actual vindictiveness is tiny. This case, we suggest, derives from that line.

### B

We have employed the *Pearce* presumption to ensure against " 'a reasonable ap-

prehension of vindictiveness,'" *see Longval v. Meachum,* 693 F.2d 236, 237 (1st Cir. 1982), *cert. denied,* 460 U.S. 1098, 103 S.Ct. 1799, 76 L.Ed.2d 364 (1983), and we assume *arguendo* the suitability of that standard.[FN3] The presumption was devised as a proxy for actual evidence of vindictive motivation because "[m]otives are complex and difficult to prove." *Goodwin,* 457 U.S. at 373, 102 S.Ct. at 2488. But the blade has two edges: wielding it in too uninhibited a manner may serve to "block a legitimate response to criminal conduct." *Id.* Where the sentencing judge's motivation cannot be called fairly into question, there is no need to indulge in the conjecture, and run the risks, which the *Pearce* presumption necessarily entails. Absent proof of an improper motive—or some sound reason to suspect the existence of one—no reasonable apprehension of vindictiveness can flourish. *See Wasman,* 468 U.S. at 569, 104 S.Ct. at 3223 (where *Pearce* presumption inapplicable, defendant must affirmatively prove actual vindictiveness). Accordingly, on resentencing, if it is reasonably clear that the judge reshaped the impost merely as a means of bringing original sentencing intentions to fruition after some new development had intervened, a need for employing the *Pearce* presumption never arises. *See, e.g., United States v. Gray,* 852 F.2d 136, 138 (4th Cir.1988); *United States v. Bentley,* 850 F.2d 327, 328–29 (7th Cir.), *cert. denied,* 488 U.S. 970, 109 S.Ct. 501, 102 L.Ed.2d 537 (1988); *United States v. Shue,* 825 F.2d 1111, 1116 (7th Cir.), *cert. denied,* 484 U.S. 956, 108 S.Ct. 351, 98 L.Ed.2d 376 (1987); *United States v. Colunga,* 812 F.2d 196, 200 (5th Cir.), *cert. denied,* 484 U.S. 857, 108 S.Ct. 165, 98 L.Ed.2d 120 (1987). Stated in different terms, there must be some evidence of actual, or at least apparent, vindictive motivation before a due process violation can be claimed.

FN3. Recent decisions suggest that *Pearce* likely prohibits enhanced sentences only when motivated by actual vindictiveness. *See Wasman,* 468 U.S. at 568, 104 S.Ct. at 3223 ("due process does not in any sense forbid enhanced sentences or charges, but only enhancement motivated by *actual vindictiveness* toward the defendant for having exercised guaranteed rights") (emphasis

in original). Absent vindictiveness, enhanced sentences are constitutional despite any "incidental deterrent effect they might have on the right to appeal." *Chaffin,* 412 U.S. at 29, 93 S.Ct. at 1984. This focus may well presage the demise of "reasonable apprehension" as the benchmark for judging due process claims of retaliatory sentencing, *see Wasman,* 468 U.S. at 574, 104 S.Ct. at 3225 (Stevens, J., concurring), but that is a bridge which need not be crossed today.

This case is a fair exemplar. Here, the district court's adjustment of defendants' sentences on remand, fairly evaluated, does not signal retaliatory animus. Indeed, the authority to reshape a sentence when multicount convictions garner mixed reviews on appeal—some affirmed, some reversed—looms as an integral component of the trial judge's broad sentencing discretion.[FN4] *See Wasman,* 468 U.S. at 563–64, 104 S.Ct. at 3220–21. Society has a strong interest in ensuring that, in our criminal jurisprudence, punishment "will suit not merely the offense but the individual defendant." *Id.* at 564, 104 S.Ct. at 3220. The district court, in tailoring a sentencing package, protects this interest by considering a "breadth of information." *Id.* The offenses charged establish a permissible range of punishment and the court then designs the ultimate sentencing plan by considering the accused's actual conduct during the criminal enterprise, as well as his life, health, habits, and background. The myriad of other factors underlying the original sentence in a multiple count case are not necessarily altered when a defendant successfully appeals his conviction on one count. After an appellate court unwraps the package and removes one or more charges from its confines, the sentencing judge, herself, is in the best position to assess the effect of the withdrawal and to redefine the package's size and shape (if, indeed, redefinition seems appropriate). Seen in the light of these realities, retrofitting a sentence after a conviction is sustained in part and vacated in part seems altogether a sensible, fully legitimate response to criminal conduct.

FN4. The newly-mandated "guideline sentencing" which has overtaken the federal courts, *see*

*generally Mistretta v. United States,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989); *United States v. Twomey,* 845 F.2d 1132 (1st Cir.1988), significantly cabins the district courts' discretion in structuring sentences, but does not entirely eliminate it. In any event, the guidelines were not applicable in the case.

Put another way, when a defendant is found guilty on a multicount indictment, there is a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan. When the conviction on one or more of the component counts is vacated, common sense dictates that the judge should be free to review the efficacy of what remains in light of the original plan, and to reconstruct the sentencing architecture upon remand, within applicable constitutional and statutory limits, if that appears necessary in order to ensure that the punishment still fits both crime and criminal. *See Bentley,* 850 F.2d at 328 ("whenever a reversal on appeal undoes a sentencing plan, or even calls the plan into question, the district court should be invited to resentence the defendant on all counts in order to achieve a rational, coherent structure in light of the remaining convictions"); *United States v. Diaz,* 834 F.2d 287, 290 (2d Cir.1987) (*Diaz II* ) (trial judge could change sentence on remand to carry out original intention), *cert. denied,* 488 U.S. 818, 109 S.Ct. 57, 102 L.Ed.2d 35 (1988); *United States v. Diaz,* 778 F.2d 86, 88–89 (2d Cir.1985) (*Diaz I* ) (court of appeals remanded for sentencing on affirmed counts when lower court's sentencing plan would otherwise be thwarted by successful appeal of other counts); *United States v. Busic,* 639 F.2d 940, 947 (3d Cir.), *cert. denied,* 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981) (like *Diaz II* ).[FN5] Notwithstanding the sparseness of the record of the original sentencing hearing, it seems plain that, following this court's order of remand, the district judge "simply used a different way to implement [her] original intention." *Bentley,* 850 F.2d at 328.[FN6]

FN5. There is some caselaw which-though perhaps distinguishable in terms of the breadth of the mandate emanating from the first appeal-may be read to stand for the proposition asserted by appellants. *See United States v. Lewis,* 862 F.2d 748, 750 (9th Cir.1988) (authority to alter

sentence on remand extended only to illegal portions, and did not empower district court to alter legal punishments previously imposed), *cert. denied,* 489 U.S. 1032, 109 S.Ct. 1169, 103 L.Ed.2d 227 (1989); *United States v. Henry,* 709 F.2d 298, 303, 306 (5th Cir.1983) (en banc) (similar). To the extent these decisions are inconsistent with today's opinion, we reject them.

FN6. At resentencing, the judge did allude to her original intentions. Regarding Pimienta–Redondo, she stated:

Let me state, Mr. Redondo, to you that . . . . when I imposed the original sentence which was a total term of 10 years I thought of it long and hard, and I still think that was a fair sentence given your individual circumstances, your prior conviction, and [the] nature of the offense.

Now, today, I have re-thought that. I have re-thought it also after your allocution given to me today, and I have left a term of 10 years. I have considered your circumstances, I have considered the nature of the offense and the aggravating circumstance that you in the past committed this same type of offense.

Regarding Pupo, the judge said at resentencing:

And as in the case of Mr. Pimienta, I must express that I understand that the Court is not increasing the sentence, that the Court always intended this defendant for the offense committed to serve the period of years that I have imposed, that he has a prior conviction, and taking into account his individual background, his prior conviction, and the nature of this offense I believe on this single count this is a fair and a reasonable sentence.

Granted, it would have been preferable if the judge had articulated her sentencing plan earlier. Still, this omission was not constitutionally dispositive.

Defendants place the cart before the horse by arguing that accepting the judge's explanation would create an appearance of vindictiveness likely to chill the incentive to appeal convictions. The Supreme Court has ruled that unless vindictiveness (proven or reasonably presumed) underlies an enhanced sentence, any such "chilling effect" is without constitutional significance. *See Chaffin,* 412 U.S. at 29–35, 93 S.Ct. at 1984–1987. Moreover, the record in no way contradicts the thesis that there was an original sentencing plan. The judge's announcement of original sentencing intentions, though articulated after the fact, *see supra* note 6, bore all the hallmarks of plausibility. It finds support, for example, in the presentence investigation reports presented at

the first sentencing hearing. We think it especially significant that these reports characterized the interdicted conduct as a unitary offense and set forth an evaluation not for each count, but rather for the "instant offense."

Nor is this a case where a disadvantage, not adequately explicable by reference to the judge's sentencing plan, has inured to defendants' detriment. Quite the contrary seems true: the arguments in favor of allowing the trial court to wield discretion are strongest where, as here, retrofitting does not serve to work a net increase in the accused's aggregate punishment. *See, e.g., Gray,* 852 F.2d at 138 ("resentencing will not be considered vindictive if the ultimate sentence for one or more counts does not exceed that given for all counts sentenced at the conclusion of the first trial") (footnote omitted); *Bentley,* 850 F.2d at 328; *United States v. Cataldo,* 832 F.2d 869, 874–75 (5th Cir.1987), *cert. denied,* 485 U.S. 1022, 108 S.Ct. 1577, 99 L.Ed.2d 892 (1988); *United States v. Hagler,* 709 F.2d 578, 579 (9th Cir.), *cert. denied,* 464 U.S. 917, 104 S.Ct. 282, 78 L.Ed.2d 260 (1983); *Busic,* 639 F.2d at 951 n. 12; *cf. United States v. Norton,* 657 F.2d 1003, 1004 (8th Cir.1981) (per curiam) (total time decreased under second sentence).

Pupo's situation exemplifies the lack of cognizable prejudice. He faces the same incarcerative prospect after the resentencing (twelve years to serve on the affirmed count) as after the original sentencing (six years to serve on each of two counts, strung together consecutively). There has been no suggestion that his 12–year sentence exceeds the statutory maximum for the remaining count, or that retrofitting the sentence otherwise caused him some further detriment, say, postponing the likely date of parole or rendering good-time credits less attainable. In real-world terms, the sentence was not "enhanced" at all. Consequently, no reason existed to refrain from giving weight to the judge's explanation. The same generalizations apply to Pimienta–Redondo.

On this record, then, we have not the slightest reason to doubt the judge's explanation. The sentences imposed after remand were sufficiently within the integument of the district court's original sentencing plan that neither Pupo nor Pimienta–Redondo could have had any reasonable apprehension that harsher punishment was meted out in retaliation for claiming an appeal. Under the circumstances of this case, a presumption of vindictiveness is unwarranted.

A simple illustration highlights the practical value of this approach and strongly suggests why it must be correct. Assume that the district judge had originally concluded that Pupo should spend six years in jail for his part in this drug-related enterprise, and had sentenced him to six years' imprisonment on Count I and a term of probation on Count II. If the *Pearce* presumption applied, then Pupo would not spend a day behind bars after reversal of his Count I conviction.[FN7] Such a result can scarcely be said to mirror the judge's original sentencing intentions, to honor the societal interest in condign punishment, or to be a necessary concomitant to treating a defendant fairly. Neither the due process clause nor *Pearce* circumscribes the district court's sentencing discretion so severely, or mandates so bizarre an outcome, where the likelihood of actually vindictiveness is demonstrably small.

---

FN7. It is no answer to suggest that district judges should guard against appellate disruption of sentencing packages by making all sentences run concurrently. The availability of consecutive, deferred, and/or suspended sentences, and their judicious use, have historically been important accoutrements of the district courts' broad sentencing authority.

Also see, Arthur W. Campbell, *Law of Sentencing,* § 8:2, at 236–37 (Harsher sentence after invalid conviction) (3rd ed. 2004).

[¶ 32] In *Jones v. State,* 2003 WY 154, ¶¶ 12–13, 79 P.3d 1021, 1025–26 (Wyo.2003), this Court spoke at length about the general principles that we believe apply in all sentencing proceedings:

While the focus of our review is for an abuse of discretion, it is frequently important that the record be reasonably clear with respect to the findings of the district court in its sentencing decision, in order

that meaningful appellate review can be achieved. The ABA Standards for Criminal Justice: Sentencing, (3rd ed. 1994), provide this guidance:

Standard 18–6.5 Sentencing for more than one offense

(a) A sentencing court should impose a sanction appropriate to the offense of conviction and should not consider other offenses of which the defendant was not charged, which were dismissed prior to determination of guilt, or of which the defendant was acquitted.

(b) In sentencing an offender convicted of multiple offenses, a sentencing court ordinarily should impose a consolidated set of sentences that appropriately takes into account the offender's current offenses and criminal history.

(c) In sentencing an offender for offenses that were part of an episode,

(i) a sentencing court should not increase the severity of the sentence or change the type of sanction merely as a result of the number of counts or charges made from a single episode, and

(ii) where the separate offenses are not merged for sentencing, a sentencing court should consider imposition of sanctions of a type and level of severity that take into account the connections between the separate offenses and, in imposing sanctions of total confinement, ordinarily should designate them to be served concurrently.

(d) In sentencing an offender for an offense graded by the amount of money or property involved, a sentencing court ordinarily should determine the appropriate sentence by treating the offense as a single offense and determining its gravity by cumulating the amounts of money or property in the separate offenses.

(e) In sentencing an offender for multiple offenses not within (c) or (d), a sentencing court should be guided by the presumptive sentence derived by reference to the sentence appropriate for the most serious current offense. Under guidance from the agency performing the intermediate function, a sentencing court may impose an enhanced sentence by treating other current offenses as part of an offender's criminal history or as factors aggravating the most serious offense.

(f) When multiple sentences of total confinement are to be served consecutively, a sentencing court should impose sentences that do not exceed a total term reasonably related to the gravity of the offenses.

(g) In sentencing an offender who is subject to service of a prior sentence, a sentencing court should take into account the unexecuted part of the prior sentence in shaping a consolidated set of sentences.

A resource manual from the National Judicial College provides these additional suggestions:

Outline for Imposition of Sentence

In imposing sentence, it is important that you address all of the necessary issues. For ease in assuring that is done, you may wish to use the following outline:

1. **Basis for Decision:** Explain the information that you have considered, e.g., presentence report, testimony at trial, testimony at hearing.

2. **Nature of the Offense:** Include the statutory punishment range.

3. **Factors:** Enumerate the statutory aggravating and mitigating factors that you find detailing the evidence which supports each. If the factors are not statutory, articulate the findings and evidence which form the basis for the decision.

4. **Victim Impact:** Address the harm to the victim.

5. **Nature of the Offender:** Detail the offender's background and your appraisal of the offender given your observation of the offender during the trial and sentencing hearing (and the offender's testimony if applicable). Appropriate details include credibility, remorse, attitude, tendencies, industry, health, general moral character, and habits, in-

cluding drug and alcohol use. Inappropriate details include certain lifestyle choices, race, gender, ethnicity, and decision to demand trial.

6. **Announcement of Sentence**: Announce the term, the range, if appropriate, and the manner of service. If your sentence involves conditions that the offender must satisfy, detail them individually. If the sentence requires follow-up court appearance, announce the date.

### Imposing Sentences for Multiple Offenses

When an offender is convicted of more than one offense, you must not only determine the appropriate sentence for each offense, but you also must determine whether the sentences should run concurrently or consecutively. State law generally establishes what you must find to impose sentences consecutively. Therefore, when faced with an offender with multiple offenses, after determining the appropriate sentence for each, you should determine whether, under the circumstances, you should impose a concurrent or consecutive sentence.

Generally, to impose consecutive sentences, you must make some finding of an aggravating circumstance that the legislature has established. It is recommended that you specify the exact statutory reasons that a consecutive, rather than a concurrent, sentence has been imposed for all the reasons illustrated above.

Penny J. White, *Sentencing Guide for State Trial Judges*, at 43–44, The National Judicial College (1998).

[¶ 33] Applying the above-cited authorities here, I conclude that the district court erred in simply editing out the two convictions that we reversed in Baker's appeal. While a "full-blown resentencing hearing" was not required, although the extent of any such hearing was most certainly within the broad discretion of the district court, a minimal requirement was that the district court re-weigh the sentences imposed in light of our decision to reverse two of Baker's six felony convictions. The district court declined to exercise its discretion, attributing to this Court's mandate on reversal a prohibition that he could do so. Such language was not included in our opinion, nor can it fairly be drawn from it. Thus, I deem the sentence imposed to be "illegal" as contemplated by W.R.Cr.P. 35(a), and it is necessary that this Court remand the case to the district court so that such a sentencing proceeding as more fully described above may be conducted.

[¶ 34] The district court's order denying Baker's motion to correct an illegal sentence should be reversed, and this matter should be remanded to the district court with directions that Baker's resentencing be conducted in light of the crimes for which he was convicted.